IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

(HEARD AT MORRISTOWN)

FILED

October 20, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | **Filed:  October 20, 1997** |
| | ) | |
| Appellant, | ) | |
| | ) | HAMILTON CRIMINAL |
| | ) | |
| Vs. | ) | |
| | ) | HON. DOUGLAS A. MEYER, |
| | ) | JUDGE |
| STEPHEN TRACY SHELINE, | ) | |
| | ) | |
| Appellee. | ) | No. 03-S-01-9701-CR-00002 |

**For Appellant:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Linda A. Ross
Associate Solicitor General
Nashville, Tennessee

At trial:
Gary D. Gerbitz
District Attorney General

Rebecca Stern
Assistant District Attorney General
Chattanooga, Tennessee

**For Appellee:**

Donald Mart Lasley
Chattanooga, Tennessee

# O P I N I O N

COURT OF CRIMINAL APPEALS
REVERSED; JUDGMENT OF TRIAL
COURT REINSTATED.

ANDERSON, C.J.

The question presented by this appeal is whether the trial court correctly applied the Tennessee "rape shield" rule when it excluded evidence of a rape victim's prior sexual conduct.[1]

The Court of Criminal Appeals, with one judge dissenting, held that the evidence should have been admitted under the exception set out in Tennessee Rules of Evidence 412, which allows the admission of specific instances of a victim's sexual conduct with persons other than the defendant if the evidence demonstrates a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of events that it tends to prove that the victim consented to the act charged. Because of the perceived error, the Court of Criminal Appeals reversed the defendant's rape conviction.

We conclude that the proffered evidence of the rape victim's prior sexual conduct did not demonstrate a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the events that it was relevant on the issue of consent. On the contrary, it was the type of evidence specifically intended to be excluded by the Tennessee Rape Shield Law as set forth in Rule 412 of the Tennessee Rules of Evidence. We therefore reverse the Court of Criminal Appeals and reinstate the rape conviction.

## BACKGROUND

The defendant, Stephen Tracy Sheline, and the victim were 23-year-old university students who met one evening at a local bar where both had been drinking. During the evening, Sheline approached the victim, who knew he was a student. He told her he needed a ride, and she agreed to give him a ride home to his fraternity house. When Sheline said he no longer lived at the fraternity and was between apartments, the victim said she offered to let him

---

[1] Oral argument was heard in this case on May 7, 1997, in Morristown, Hamblen County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

sleep on the living room couch in her apartment, which she shared with three other women. Sheline testified that she simply offered to let him stay at her apartment.

The victim testified that when they arrived at her apartment, the defendant pushed her against a wall and attempted to lift up her skirt. She resisted and told Sheline that he was to sleep on the living room couch. According to the victim, she said goodnight and went into her bedroom, and then went into the adjacent bathroom. When she emerged, Sheline was in her bedroom wearing only his pants. Although the victim resisted, he put her on the bed and pushed up her skirt. She fought him, "tried to wiggle out from underneath" him, and "told him to stop." Sheline, however, held the victim's hands down at her sides and vaginally penetrated her with his penis. When the victim was able to get away, she ran from her apartment to a neighbor's apartment for help. The neighbor testified that the victim was crying hysterically.

Sheline's version was different. He said that he met the victim at the bar, and that an acquaintance told him that the victim "thought he was cute and that she wanted to kiss him." He said he spent most of the evening with his friends, but the victim talked to him periodically and also hugged him. According to his version, when the bar closed, the victim asked if he wanted a ride home, and he agreed. As they drove towards his fraternity house, he told her he was between apartments and she offered to let him stay at her apartment. When they arrived at the victim's apartment, he said he sat down on the bed while the victim went into the bathroom. Sheline testified that when she emerged from the bathroom, they started kissing and touching, and they removed their shirts. He said he performed oral sex on the victim and then penetrated her with his penis. They stopped having intercourse when the victim said, "I don't think we can do this anymore." They continued to kiss and hug for several minutes, and then Sheline fell asleep.

As a result of a police investigation, the defendant was indicted for rape. His defense was that the sexual intercourse was consensual. At trial in a jury-out proceeding, the defendant proffered the testimony of two witnesses under Tenn. R. Evid. 412.[2]

The first witness, Eric Gray, testified during the offer of proof that he and the victim had known each other for a year, were good friends, and that he had engaged in sexual intercourse with her on two occasions. The first time, he said he and the victim were drinking heavily at a bar and then returned to Gray's apartment where they engaged in oral sex and sexual intercourse. The second time, he and the victim went to a basketball game, to a fraternity party, and then to the victim's apartment, where they engaged in sexual intercourse.

The second witness, Gary Jindrak, testified during the offer of proof that he and the victim talked in the bar on the same evening she met the defendant. He said they kissed and the victim put her arm around him. He testified that later she asked him to go home with her, but he declined. Jindrak testified that he never had sexual relations with the victim at any time.

The defendant argued to the trial court that he was entitled to present the testimony of Gray and Jindrak because the victim's "promiscuity" was relevant to his defense of consent. The trial court ruled that the proffered testimony of Gray and Jindrak was inadmissible. The trial then proceeded on the proof of the victim and the defendant and other supporting witnesses. After deliberating, the jury accredited the victim's testimony and found the defendant guilty of rape.

On appeal, the Court of Criminal Appeals, in a two to one decision, reversed the rape conviction on the grounds that the trial court erred in excluding

---

[2] The defendant proffered the testimony of a third witness, Richard Burns, who testified that he had sexual intercourse with the victim on numerous occasions in the course of a steady dating relationship. The Court of Criminal Appeals affirmed the trial court's ruling excluding this testimony; thus, the ruling with respect to Burns is not before us.

the evidence of the first sexual episode described by Gray, as well as the events on the evening in question described by Jindrak. The majority concluded that

> [t]he evidence of the first sexual encounter with Gray is relevant to the issue of consent because the factual scenario so closely resembles the Defendant's version of the facts that it constitutes one episode of a distinctive pattern in which the victim met an acquaintance at a bar, was drinking, and eventually had sexual relations with that person. This encounter is also similar to the events described by witness Gary Jindrak, and these two encounters taken in conjunction with the Defendant's version of the facts, constitute a distinctive pattern.

Judge John Peay dissented. He did not agree that the testimony established a distinctive pattern that closely resembled the defendant's version of the events. His dissent reasoned that if the victim's behavior with Gray was distinctive, then "every woman who has sexual relations with a man she meets in a bar is engaging in 'distinctive' sexual behavior." The dissent also concluded that the court should not presume from Jindrak's testimony that the victim would have consented to sexual intercourse with Jindrak, or that the testimony had any relevance to whether the victim consented to have sex with the defendant.

We granted the State's application for permission to appeal to review the applicability in this case of the rape shield provisions set forth in Tenn. R. Evid. 412.

## TENNESSEE RAPE SHIELD LAW

Rape shield laws were adopted in response to anachronistic and sexist views that a woman who had sexual relations in the past was more likely to have consented to sexual relations with a specific criminal defendant.[3] Those attitudes resulted in two rape trials at the same time -- the trial of the defendant and the trial of the rape victim based on her past sexual conduct. It has been said that the victim of a sexual assault is actually assaulted twice -- once by the

---

[3] See Lee v. State, 132 Tenn. 655, 179 S.W. 145 (1915)("No impartial mind can resist the conclusion that a female who had been in a recent habit of illicit intercourse with others will not be so likely as to resist as one who is spotless and pure.").

offender and once by the criminal justice system. The protections in rape shield laws recognized that intrusions into the irrelevant sexual history of a victim were not only prejudicial and embarrassing but also a practical barrier to many victims reporting sexual crimes. As the comments to Tennessee's rape shield law (Rule 412) observe:

> [T]he rule. . . takes into account that the public's interest in prosecuting and convicting people guilty of various sexual offenses is frustrated when sexual assault victims refuse to report the offenses or to testify about them at trial because of the possible admission of evidence of their sexual history. Moreover, the rule seeks to minimize the likelihood that evidence of the alleged victim's sexual history may cause the jury to be unfairly prejudiced against the victim.

At the same time, rape shield laws recognize those circumstances in which the admission of such evidence, despite its potentially embarrassing nature, must be admitted to preserve an accused's right to a fair trial. See State v. Shockley, 585 S.W.2d 645 (Tenn. Crim. App. 1978).

As does nearly every jurisdiction,[4] Tennessee's "rape shield" rule limits the admissibility of evidence about the prior sexual behavior of a victim of a sexual offense, and establishes procedures for determining when evidence is admissible. Tenn. R. Evid. 412 [5] provides:

> Notwithstanding any other provision of law, in a criminal trial, preliminary hearing, deposition, or other proceeding in which a person is accused of an offense under Tenn. Code Ann. § 39-13-502 (aggravated rape), 39-13-503 (rape), 39-13-504 (aggravated sexual battery), 39-13-505 (sexual battery), 39-13-507 (spousal sexual offenses), or the attempt to commit any such offense, the following rules apply:
>
> (a) Definition of sexual behavior.-- In this rule, 'sexual behavior' means sexual activity of the alleged victim other than the sexual act at issue in the case.

---

[4] See Annotation, Modern Status of Admissibility in Forcible Rape Prosecution, of Complainant's Prior Sexual Acts, 94 A.L.R. 3d 257 (1979 & 1996 supp.).

[5] This rule of evidence superseded Tenn. Code Ann. § 40-17-119, which had said that "[s]pecific instances of prior consensual sexual activity between the victim and any person other than the offender shall not be admitted into evidence in prosecutions [citations omitted]; provided, that when consent by the victim is at issue, such evidence may be admitted if it is first established to the court outside the presence of the jury and spectators by the method of clearing the courtroom that such activity shows such a relation to the conduct involved in the case on the part of the victim that is relevant to the issue of consent."

(b) Reputation or opinion.-- Reputation or opinion evidence of the sexual behavior of an alleged victim of such offense is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this Rule and required by the Tennessee or United States Constitution.

(c) Specific instances of conduct.-- <u>Evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of the Rule, and the evidence is</u>:

> (1) Required by the Tennessee or United States Constitution, or

> (2) Offered by the defendant on the issue of credibility of the victim, provided the prosecutor or victim has presented evidence as to the victim's sexual behavior, and only to the extent needed to rebut the specific evidence presented by the prosecutor or victim, or

> (3) If the sexual behavior was with the defendant, on the issue of consent, or

> (4) <u>If the sexual behavior was with persons other than the defendant,</u>

> (i) to rebut or explain scientific or medical evidence, or

> (ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters, or

> (iii) <u>to prove consent if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in such a manner as to lead the defendant reasonably to believe that the victim consented</u>.

> . . . .

(Emphasis added).


Accordingly, if, as in the present case, the victim's sexual behavior was

with persons other than the defendant, it may be admissible under the rule only

> (i) to rebut or explain scientific or medical evidence,

> (ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters, or

> (iii) to prove consent <u>if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in</u>

> such a manner as to lead the defendant reasonably to believe that the victim consented.

Tenn. R. Evid. 412(c)(4)(emphasis added). As with other evidentiary rulings, the admissibility of the evidence rests in the discretion of the trial court.

When evidence is offered under the rule, the trial court must conduct a non-public hearing and consider the admissibility of the proposed evidence, and if otherwise admissible, then determine whether its probative value outweighs its unfair prejudice to the victim. Tenn.R. Evid. 412(d). As with other evidentiary rulings, the admissibility of the evidence rests in the discretion of the trial court.

The State contends that the Court of Criminal Appeals' opinion threatens to resurrect ill-founded and fallacious presumptions about alleged sexual victims and that its interpretation of the Rule 412(c)(4)(iii) exception effectively engulfs the entire rule. The State argues that the testimony of Gray and Jindrak did not establish a pattern of distinctive sexual behavior by the victim that so closely resembled the defendant's version of events as to be relevant on the issue of consent. The defendant, however, maintains that the Court of Criminal Appeals correctly interpreted Rule 412(c)(4)(iii), and that excluding the evidence denied his rights under the Tennessee and United States Constitutions.

As we consider these arguments, we first turn to the language of Rule 412(c)(4), which requires a pattern of sexual behavior. Although there is no Tennessee case on the issue, it is clear that a "pattern" of sexual conduct requires more than one act of sexual conduct. Cohen, Paine and Sheppeard, Tennessee Law of Evidence, § 412.4 at 236. The plain language of the rule speaks of "specific instances" of sexual conduct with "persons" other than the defendant. Moreover, other jurisdictions have consistently observed that a "pattern" of sexual conduct denotes repetitive or multiple acts and not just an isolated occurrence. See State v. Ginyard, 468 S.E.2d 528 (N.C. App. 1996);

State v. Woodfork, 454 N.W.2d 332 (S.D. 1990); Kaplan v. State, 451 So.2d 1386, 1387 (Fla. App. 1984); State v. Patnaude, 438 A.2d 402 (Vt. 1981); State v. Jones, 617 P.2d 1214 (Haw. 1980); Parks v. State, 249 S.E.2d 672 (Ga. App. 1978).

The rule also requires that the pattern consist of sexual behavior so distinctive and so closely resembling the defendant's version that it tends to prove that the victim consented to the act charged. The advisory comments to Rule 412 use the word "signature" cases to describe the distinctive behavior required. As the Illinois Supreme Court has said, the sexual conduct must be "so unusual, so outside the normal, that it had distinctive characteristics which make it the complainant's modus operandi." People v. Sandoval, 552 N.E.2d 726, 738 (Ill. 1990); see also State v. Crims, 540 N.W.2d 860 (Minn. App. 1995); Jeffries v. Nix, 912 F.2d 982, 986 (8th Cir. 1990). Moreover, to have probative value on the issue of consent, the pattern of distinctive sexual conduct must closely resemble the defendant's version of facts. Cohen, et al., supra, § 412.4 at 246-47.

Applying the rule and the foregoing principles to the facts of this case, we conclude that there was no pattern of prior sexual behavior on the victim's part. Gray testified that on one occasion in the past he had oral sex and sexual intercourse with the victim after the couple met in a bar where both had been drinking. On the second occasion, he and the victim had sexual intercourse after attending a basketball game and a fraternity party. On the other hand, Jindrak testified only that the victim kissed him and asked him to go home with her.[6] For the Jindrak testimony to be considered part of a "pattern," a court would have to presume that the victim would have consented to engage in sexual intercourse

---

[6] Although kissing does not necessarily have a sexual connotation, the trial judge ruled on this testimony under Rule 412. "Sexual behavior is defined in Rule 412 as "sexual activity of the alleged victim other than the sexual act at issue in the case." This broad definition "deals with sexual intercourse as well as every other variety of sexual expression." Cohen, et al., supra, § 412.2 at 241. Thus, we consider the incident under Rule 412 as well.

with Jindrak. We are unwilling to make such a presumption. The two separate occasions of sexual intercourse described by Gray, therefore, do not establish the required pattern of sexual conduct.

Moreover, there was nothing so distinctive about the testimony of either Gray or Jindrak that so closely resembled the defendant's version of the events that took place between he and the victim. The described acts could hardly be characterized as signature cases. As Judge Peay observed in his dissent, to decide otherwise is to hold that any woman who has sexual intercourse with someone she meets in a bar is automatically engaging in "distinctive" sexual conduct. Other courts have rejected such a conclusion as well:

> We observe, however, that a victim's sexual history with others only goes to show a generalized attitude toward sex and says little if anything about her attitude toward a specific act of sex with the defendant. . . . We conclude that the evidence of [the victim's] sexual advances, over a period of years, toward some of the men she had met in a bar is not relevant, in itself, to establish that she consented to have sex with [the defendant].

State v. Peite, 839 P.2d 1223, 1229 (Idaho App. 1992).

Accordingly, we hold that the evidence proffered by the defendant did not establish a pattern of distinctive sexual behavior as required for admissibility under Tenn. R. Evid. 412(c)(4)(iii), and it was properly excluded by the trial court.

## CONSTITUTIONALITY

The defendant maintains that the application of the rape shield provision under the facts of this case violated his right to present evidence and to confront witnesses under the United States and Tennessee Constitutions. U.S. Const. amend VI & XIV; Tenn. Const. art. I, § 9. He argues that the evidence was also critical to his defense and necessary to ensure his right to a fair trial.

The United States Supreme Court has said that "the rights to confront and cross examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process," and emphasized that the denial or "significant diminution" of these rights "calls into question the ultimate integrity of the fact finding process and requires that the competing interest be closely examined." Chambers v. Mississippi, 410 U.S. 284, 295-96, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

This does not mean that a defendant has a right to present irrelevant evidence. Wood v. State of Alaska, 957 F.2d 1544, 1549 (9th Cir. 1992). Moreover, the Supreme Court has recognized that even the right to present relevant evidence "may, in an appropriate case, bow to accommodate other legitimate interests in the criminal trial process." Chambers, 410 U.S. at 295, 93 S.Ct. at 1045. For instance, a trial judge has the discretion "to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991).

In Michigan v. Lucas, the Supreme Court addressed the potential impact of rape shield laws on a defendant's right to present evidence and to confront adverse witnesses. In that case evidence of the victim's prior sexual relations with the defendant was excluded based on the defendant's failure to make a timely offer of proof under a Michigan rape shield law. In holding that the exclusion did not per se violate the sixth amendment, the Court stressed that the rape shield statute "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." Id., 500 U.S. at 153, 111 S.Ct. at 1748.

The Tennessee rule, in addition to establishing specific circumstances in which evidence relating to a victim's prior sexual history may be admissible, also states that such evidence is admissible if required under either the Tennessee or United States Constitutions. Tenn. R. Evid. 412(b) & (c)(1). The comments to the rule cite two examples from other states. In the first case from Oregon, the defendant claimed that the victim falsely accused him of rape because he had threatened to tell the victim's parents about her active sexual conduct with others. The Oregon court concluded that the defendant's right to confrontation was violated when the rape shield law prevented him from proving the victim's motive to lie about her sexual activity with the defendant. State v. Jalo, 557 P.2d 1359 (Or. App. 1976).

In the second case from Pennsylvania, the defendant was prevented from trying to show that the victim accused him of rape to get him out of the house so that she could then resume sexual activity with another family member. The Pennsylvania Supreme Court held that where "the Rape Shield Law purports to prohibit the admission of evidence which may logically demonstrate a witness' bias, interest, or prejudice or which properly attacks the witness' credibility, it unconstitutionally infringes upon the accused's right of confrontation under the sixth amendment to the United States Constitution. . . ." Commonwealth v. Black, 487 A.2d 396 (Pa. Super. 1985).

Although the case by case nature of such an inquiry precludes a complete list, other courts have recognized similar circumstances in which the prior sexual history of a victim may be relevant and necessary to preserve a defendant's right to confrontation. See People v. Sandoval, 552 N.E.2d at 737-38 (quoting, People v. Hackett, 365 N.W.2d 120 (Mich. 1984)); see also Commonwealth v. Joyce, 415 N.E.2d 181 (Mass. 1981).

In the case before us for decision, the evidence of the victim's prior sexual behavior was offered not to show the victim's motive, bias, or a history of false claims, but rather, to show consent. As we have discussed, relevance to the issue of consent requires more than an isolated act or acts of sexual behavior -- it requires a pattern of distinctive sexual behavior by the victim that closely resembled the defendant's version of events. The fact that the victim may have had sexual relations with Gray after meeting him in a bar is not relevant to whether she consented to sexual relations with the defendant. Likewise, the victim's conduct with Jindrak had no bearing on the consent issue.

In sum, the proffered testimony was the type of evidence required to be excluded under Rule 412. The trial court's application of Rule 412, therefore, did not deny the defendant's rights under the Tennessee or United States Constitutions.

## CONCLUSION

The proffered evidence of the victim's sexual behavior with persons other than the defendant did not establish a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the encounter with the victim that it tends to prove the victim consented to the act charged and it, therefore, was not admissible under Rule 412(c)(4)(iii), nor was its admission into evidence required by the United States or Tennessee Constitutions. We therefore reverse the judgment of the Court of Criminal Appeals and reinstate the rape conviction of the trial court. The costs of this appeal are taxed to the defendant, for which execution may issue, if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE

**Concur:**

Drowota, Reid, Birch, and Holder, JJ.

-13-