IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 13, 2001

## STATE OF TENNESSEE v. JEFFREY L. MARCUM

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-755     Roy B. Morgan, Jr., Judge**

---

**No. W2000-02698-CCA-R3-CD  - January 23, 2002**

---

The appellant, Jeffrey L. Marcum, appeals his convictions by a jury in the Madison County Circuit Court of one count of rape of a child, one count of aggravated sexual battery, and one count of incest. In this appeal, the appellant raises the following issues for our consideration: (1) whether the trial court erred under Tenn. R. Evid. 412 in limiting his cross-examination of the victim concerning her "sexual history and knowledge;" (2) whether the evidence adduced at trial is sufficient to support the jury's "verdict" of guilt; and (3) whether the trial court erred in failing to instruct the jury on the lesser-included offense of attempt to commit rape of a child. Following a careful review of the record and the parties' briefs, we affirm the judgments of the trial court for the offenses of aggravated sexual battery and incest, but we reverse the judgment for the offense of rape of a child and remand the case for a new trial on that charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in
Part and Reversed and Remanded in Part.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY, J., and
CORNELIA CLARK, SP. J., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, Stephen P.
Spracher (at trial and on appeal), and J. Colin Morris (at trial), Jackson, Tennessee, for the appellant,
Jeffrey L. Marcum.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney
General; James G. "Jerry" Woodall, District Attorney General; and Jody S. Pickens, Assistant
District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On October 4, 1999, a Madison County Grand Jury returned a three-count indictment
charging the appellant with rape of a child, aggravated sexual battery, and incest. The indictment
arose from the appellant's sexual assault upon his ten-year-old stepdaughter, BV, in their Madison

County home in November 1998.[1]  The appellant's case proceeded to trial on January 19, 2000.  At trial, BV testified that she was currently eleven years old.  She further related to the jury that she and her younger brother, Brandon, were in the sole care of the appellant on the evening of his offenses.  Specifically, both the appellant and the children were in the living room of their home watching cartoons on television.  BV was seated beside the appellant on the couch, and Brandon was lying on the floor.  BV recalled that, before assaulting her, the appellant ordered Brandon to keep "his head down" on the floor.  The appellant then placed his penis against BV's "private part" "between [her] legs."  According to BV, the appellant "tried to" penetrate her "private part."  The appellant also "touched [her private part] with his hands and mouth" and "[p]ut his hands and mouth on [her] [breasts]."  Finally, the appellant forced BV to perform fellatio upon him.  BV recalled that, during the assault, she asked the appellant to stop, but he ignored her plea.  Following the assault, the appellant instructed her to "tell no one because he would get in trouble."  Notwithstanding the appellant's instruction, BV later reported the incident to the appellant's sister, Teresa Smith.  BV indicated that she was forced to confide in Smith because Smith's daughter found and read BV's written account of the incident.

Brandon confirmed at trial that, on the evening of November 25, 1998, he and his sister were in the sole care of the appellant.  Like BV, Brandon testified that the appellant was in the living room with the children watching cartoons on television.  Brandon recalled that they were watching Rugrats.  He also recalled that he was lying alone on the floor "where a big coffee table was."  He denied remembering anything "out of the ordinary happening."  However, he conceded that he "pa[id] pretty close attention to cartoons when . . . watching them."  He also conceded that, on the evening in question, the appellant pushed his head "down on the ground," instructing him to "stay down . . . or he was going to whip me."  Brandon remained on the floor watching cartoons until his mother returned home.

Teresa Smith, the appellant's sister, testified that the appellant and his family visited her home on Thanksgiving in 1998.  Following the Thanksgiving celebration, the appellant and his wife returned home, but BV and Brandon spent the night with the Smiths.  On the following morning, Smith's two eldest children reported to her that BV had written sexually graphic material and had drawn pictures in a diary belonging to their younger sibling.  Smith testified:

> I talked to [BV] alone probably for 30 minutes or longer.  I knew from what - - the diary in there that there was something wrong, that she wouldn't have written the things she did had somebody not been molesting [BV].  She denied it repeatedly for at least 30 minutes or more, and then when I told [BV] that I was going to have to call her mother and show her mother the diary, [BV] begged me not to.  She told me that if I did, her mother would not allow her to see her daddy anymore.

---

[1] It is the policy of this court to withhold the identity of minor victims of sexual offenses, referring to them only by their initials.

-2-

Annette Lay, an employee of the Department of Children's Services, testified that she interviewed BV concerning allegations that the child had been sexually assaulted by her stepfather. BV reported to Lay that the appellant had forced her to perform fellatio upon him, had fondled her breasts, and had touched her "tee-tee" with his "private part."

Angela Marcum, BV and Brandon's mother, confirmed at trial that, in 1998, she frequently left the children in the appellant's sole care. She further testified that, after learning of BV's allegations, she asked the appellant to leave their home, and she and the appellant decided to initiate divorce proceedings. On September 1, 1999, the appellant telephoned her and apologized "for all the heartache and pain [he had] caused."

Gus Marcum, the appellant's brother, testified at trial that he discussed BV's allegations with the appellant, and the appellant denied sexually assaulting his stepdaughter. However, Marcum acknowledged tape-recorded statements that he had made to Angela Marcum indicating the contrary. Marcum volunteered two alternative explanations for his statements. First, he claimed that, because he was drunk at the time of his conversation with Ms. Marcum and because he was attempting to retrieve personal property from Ms. Marcum's home, he simply told his sister-in-law whatever she wanted to hear. Second, he claimed that he did not express himself clearly during his conversation with Ms. Marcum and never intended to suggest that the appellant had confessed to him.

The appellant testified on his own behalf. He denied sexually assaulting BV in any way. In particular, he noted that he had not baby-sat his stepchildren since 1997 because someone had submitted a complaint to the Department of Children's Services that he was beating the children. The appellant further asserted that, following BV's allegations, he decided to seek a divorce from Angela Marcum, but Ms. Marcum opposed his decision and, along with the children, would frequently visit him at his workplace. The appellant claimed that he was ultimately forced to petition a court for an order of protection against Ms. Marcum.

Following the parties' presentation of proof, the trial court instructed the jury on the offenses of rape of a child, aggravated sexual battery, and incest but declined to provide instructions on any lesser-included offenses, notwithstanding defense counsel's request that the jury be instructed on the offense of attempt to commit rape of a child. The jury found the appellant guilty of all three offenses included in the indictment, and the trial court imposed an effective sentence of twenty years incarceration in the Tennessee Department of Correction.

## II. Analysis
### A. Tenn. R. Evid. 412
The appellant first contends in this appeal that the trial court erred under Tenn. R. Evid. 412(c)(4)(ii) in limiting his cross-examination of BV concerning her "sexual history and knowledge." Specifically, the appellant contends that "the trial court so limited the defendant's ability to explore [BV]'s sexual history and knowledge that the defendant was denied a fair trial." The State responds that the appellant has waived this issue by failing to rely upon Tenn. R. Evid. 412 in the trial court. Additionally, the State argues that the appellant's failure to comply with the

procedural requirements of Tenn. R. Evid. 412 precluded the admission of any evidence of other sexual behavior by BV. Finally, the State notes the appellant's failure to make an offer of proof concerning the substance of any evidence excluded by the trial court's ruling and his consequent inability to demonstrate the admissibility of the evidence pursuant to Tenn. R. Evid. 412(c)(4)(ii). The State concludes that "[t]he essence of [the appellant's] complaint is that he was not allowed to go on a fishing expedition concerning his then eleven-year-old victim's sexual history or knowledge of sexual matters."

In relevant part, the record reflects that defense counsel asked on the first day of the appellant's trial if he would be permitted to question BV concerning her prior statement to Teresa Smith that she had been sexually assaulted by her uncle as well as by the appellant. The record contains no pre-trial motion requesting the admission of the proposed testimony, and defense counsel did not otherwise specify which rule of evidence, if any, supported the admission of the testimony. The prosecutor responded, "Your Honor, I don't think it has a bearing on this incident, and I think it gets into Rule 412, prior sexual contact or conduct." The trial court evidently disagreed with the prosecutor and concluded:

> I think it goes to credibility. . . .
>
> I believe it could come under 404 where we're dealing with the character evidence, we're dealing with the character of the victim. That's a possibility, evidence of a pertinent character trait of the victim, and I take it in this case accusing others of such conduct over and over. . . .
>
> Gentlemen, here's what I'm going to do under the circumstances. [Defense counsel] can ask the question of this witness as to whether or not she has accused others of certain conduct which you're alluding to, and then when she denies that, certainly you could use another witness as to rebuttal or impeachment, which is what it would be, impeachment of prior inconsistent statements.
>
> . . . .
>
> [Defense Counsel is] dealing with evidence of character or conduct of this individual for impeachment purposes . . . and [he is] limited to that.
>
> . . . .
>
> Now if you were getting into specific conduct, you understand this, under specific conduct under the rules of evidence, we've got to have an - - I'm of the opinion we've got to have a hearing outside the presence of the jury to hear what specific instances of conduct you

might be wanting to refer to and what probative value versus prejudicial value that might have.

Notwithstanding its ruling, the trial court noted, unavailingly, that argument by counsel concerning the rules of evidence would be helpful.

Following the trial court's ruling and during his cross-examination of BV, defense counsel asked the child whether she had ever accused anybody other than the appellant of sexually assaulting her. BV denied making any other accusations. Accordingly, defense counsel introduced the testimony of Teresa Smith that, when BV told Smith about the appellant's offenses, BV also stated that she had been sexually assaulted in the past by an uncle who had since committed suicide.[2]

In addressing the appellant's complaint on appeal, we first emphasize that it apparently concerns only the scope of the appellant's cross-examination of BV and does not encompass the exclusion of testimony by other witnesses. Cf. State v. Brown, 29 S.W.3d 427 (Tenn.), cert. denied, 531 U.S. 916, 121 S. Ct. 275 (2000). In light of BV's denial that she had ever accused anyone other than the appellant of sexually assaulting her, it is unclear what additional testimony would have been forthcoming from the victim concerning her "sexual history and knowledge." As noted by the State, the appellant never made an offer of proof for the purpose of preserving this issue for appeal. Tenn. R. Evid. 103(a)(2). Moreover, we agree with the State that the appellant has waived this issue by completely failing in the trial court to cite Tenn. R. Evid. 412 or propound any grounds for admitting BV's testimony concerning her "sexual history and knowledge." Tenn. R. App. P. 36(a). Indeed, the appellant expressed no objection to or disagreement with the trial court's ruling concerning the permissible scope of his cross-examination of BV. Id. Defense counsel explained his inability to provide any argument to the trial court concerning the application of the rules of evidence by remarking, "This sort of just came up this morning, to be honest with you." We note, however, that information concerning BV's prior accusation against her uncle was available to defense counsel through the appellant's own witnesses, namely Annette Lay and Teresa Smith.

Notwithstanding the appellant's waiver of this issue and because we are remanding this case on other grounds for a new trial on the charge of rape of a child, we elect to briefly address the trial court's ruling for the purpose of providing guidance to both the court and the parties. Again, the trial court seemingly ruled that the appellant could cross-examine BV concerning her prior accusation against her uncle for the purpose of demonstrating a character trait pertinent to her credibility, specifically the "character trait" of "accusing others of [sexual assault] over and over." Contrary to the appellant's claim at the hearing on his motion for new trial and on appeal, the court did not appear to rely upon Tenn. R. Evid. 412 but instead referred to Tenn. R. Evid. 404(a)(2).

---

[2]Although Smith's testimony concerning BV's prior accusation was admitted as a prior inconsistent statement, we note that the trial court did not provide a contemporaneous limiting instruction concerning the jury's consideration of the statement, nor did the State request a contemporaneous limiting instruction. Nevertheless, the trial court did instruct the jury immediately before its deliberations that the prior inconsistent statements of a witness should be considered solely for the purpose of assessing the witness' credibility and not as evidence of the facts to which the prior statement relates. Cf. State v. Smith, 24 S.W.3d 274, 279-281 (Tenn. 2000).

The trial court's remarks suggest its assumption that the relevance of BV's prior accusation lay in its untruthfulness, an assumption in diametric contradiction to the position subsequently taken by the appellant in his motion for new trial and on appeal. Such an assumption would certainly explain the trial court's failure to exclude testimony about the accusation as hearsay, see, e.g., State v. Steven Lee Whitehead, No. W2000-01062-CCA-R3-CD, 2001 WL 1042164, at *11 (Tenn. Crim. App. at Jackson, September 7, 2001), and the trial court's failure to apply Tenn. R. Evid. 412, see, e.g., State v. Anthony Lynn Wyrick, No. E1999-02206-CCA-R3-CD, 2001 WL 472849, at *16 (Tenn. Crim. App. at Knoxville, May 4, 2001). Inexplicably, however, the trial court also concluded that testimony about the accusation did not constitute evidence of a specific instance of conduct. We would respectfully disagree. In other words, assuming that BV's prior accusation against her uncle was false, Tenn. R. Evid. 608(b) controlled the cross-examination of BV concerning the accusation for the purpose of attacking her credibility as a witness. Wyrick, No. E1999-02206-CCA-R3-CD, 2001 WL 472849, at **24-29. Alternatively, subsection (b) of Tenn. R. Evid. 404 rather than subsection (a)(2) controlled the admission of the testimony as substantive evidence. Wyrick, No. E1999-02206-CCA-R3-CD, 2001 WL 472849, at **17-24.

Of course, the appellant now clarifies that BV's prior accusation that she was sexually assaulted by her uncle was relevant because it was true. Yet, if offered in evidence to prove the truth of the matter asserted, the accusation constituted hearsay. Tenn. R. Evid. 801(c). Nevertheless, the appellant apparently complains that the trial court should have permitted his cross-examination of BV concerning the assault itself rather than her accusation. Again, we are only able to speculate due to the appellant's failure to make an offer of proof. In any event, testimony by BV describing her uncle's sexual assault would indeed constitute evidence of other sexual behavior by the victim within the meaning of Tenn. R. Evid. 412, see, e.g., Whitehead, No. W2000-01062-CCA-R3-CD, 2001 WL 1042164, at *10, hence the appellant's argument that BV's testimony was relevant under Tenn. R. Evid. 412(c)(4)(ii) to explain her knowledge of sexual matters and, moreover, was necessary to ensure his right to a fair trial. Cf. State v. Sheline, 955 S.W.2d 42, 47-48 (Tenn. 1997). The appellant's argument might possess some merit had he ever presented it to the trial court, much less complied with the procedural requirements of Tenn. R. Evid. 412, see id. at (d).[3]

_____

[3]Prior to July 1, 1999, Tenn. R. Evid. 412 on its face applied only to proceedings in which the defendant was accused of aggravated rape, rape, aggravated sexual battery, and spousal sexual offenses. Effective July 1, 1999, the supreme court amended Tenn. R. Evid. 412 by expanding this list of offenses to include incest and rape of a child. We note that the amendment became effective after the date of the appellant's offenses but before the date of the appellant's trial. Significantly, however, the appellant has never argued that the application of Tenn. R. Evid. 412 in his case would violate ex post facto constitutional provisions; on the contrary, he seeks the application of the amended rule. In any event, we note that courts addressing the application of rape shield laws to prosecutions for offenses committed prior to the laws' enactment have declined to find any violation of ex post facto constitutional provisions. See, e.g., United States v. Brooks, 17 M.J. 584, 585-586 (A.C.M.R. 1983); Turley v. State, 356 So. 2d 1238, 1243-1244 (Ala. Crim. App. 1978); Logan v. State, 442 S.E. 2d 883, 886 (Ga. Ct. App. 1994); People v. Dorff, 396 N.E.2d 827, 828-830 (Ill. Ct. App. 1979); Finney v. State, 385 N.E.2d 477, 480-481 (Ind. Ct. App. 1979); cf. Carmell v. Texas, 529 U.S. 513, 521-552, 120 S. Ct. 1620, 1626-1643 (2000), and State v. Bragan, 920 S.W.2d 227, 240-241 (Tenn. Crim. App. 1995). We also note that, at the time of the adoption of Tenn. R. Evid. 412 in 1991, the offense known as rape of a child was contained in the aggravated rape statute and, therefore, subject to the rule. Only in 1992 did the legislature enact a

(continued...)

In conclusion, we emphasize that, regardless of the rule of evidence upon which the appellant intended to rely, "the burden of introducing evidence sufficient to support a finding that the requirements of an evidence rule are satisfied remains on the proponent of evidence." State v. Stinnett, 958 S.W.2d 329, 330 n. 5 (Tenn. 1997); Tenn. R. Evid. 104(b). Thus, for example, under Tenn. R. Evid. 608(b), the appellant was required to establish a "reasonable factual basis" for cross-examining BV concerning a prior false accusation. Wyrick, No. E1999-02206-CCA-R3-CD, 2001 WL 472849, at *25-26. With respect to Tenn. R. Evid. 404(b), the appellant was required to present clear and convincing proof of a prior false accusation. State v. Mallard, 40 S.W.3d 473, 486 (Tenn. 2001); Wyrick, No. E1999-02206-CCA-R3-CD, 2001 WL 472849, at *22; Tenn. R. Evid. 404, Advisory Commission Comments. As to Tenn. R. Evid. 412, the appellant carried, at a minimum, the burden of proving by a preponderance of the evidence that BV was sexually assaulted by her uncle. Cf. State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999); State v. Stamper, 863 S.W.2d 404, 406 (Tenn. 1993). The record in this case is devoid of evidence establishing either the truth or falsity of BV's prior accusation against her uncle.

## B. Sufficiency of the Evidence

The appellant also challenges the sufficiency of the evidence underlying the jury's "verdict." The State disputes the merits of the appellant's contention with respect to all three convictions in this case. However, it is unclear from the appellant's brief whether his challenge encompasses all three convictions. Indeed, the appellant's brief contains no argument on this issue whatsoever, albeit he has included a boilerplate recitation of the standard by which an appellate court reviews the sufficiency of evidence underlying a jury's verdict. Accordingly, the appellant has waived this issue. Tenn. R. App. P. 27(a)(7); Tenn. Ct. of Crim. App. 10(b); see also, e.g., State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988); State v. Charles Ray Allen, No. M1999-00818-CCA-R3-CD, 2000 WL 1649507, at *4 n.1 (Tenn. Crim. App. at Nashville, November 3, 2000), perm. to appeal denied, (Tenn. 2001). In any event, there is sufficient evidence in the record from which a rational trier of fact could find beyond a reasonable doubt that the appellant committed the offenses of rape of a child, aggravated sexual battery, and incest. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982); Tenn. R. App. P. 13(e).

Addressing each conviction in turn, we first note that Tenn. Code Ann. § 39-13-522(a) (1997) defines the rape of a child as the unlawful penetration of a victim by the defendant or the defendant by a victim when the victim is less than thirteen years of age. The defendant must act with intent, knowledge, or recklessness. Tenn. Code Ann. § 39-11-301(c) (1997). Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7) (1997).

---

[3](...continued)
separate statute for the offense of rape of a child. Perhaps for this reason, we have previously indicated in dicta that Tenn. R. Evid. 412 was applicable in rape of a child cases even before the 1999 amendment. State v. George Milton Brooks, No. 02C01-9804-CC-00116, 1998 WL 775649, at *4 n. 4 (Tenn. Crim. App. at Jackson, November 6, 1998).

Briefly recapitulating, BV testified at trial that she was currently eleven years old and that, in November 1998, the appellant forced her to perform fellatio upon him in the living room of their home while her brother lay on the floor nearby watching television. She further testified that, immediately prior to the sexual assault, the appellant ordered her younger brother to keep "his head down" on the floor, thereby preventing him from witnessing the assault. Afterwards, the appellant ordered BV to tell no one about the assault. BV's testimony alone supports the jury's verdict finding the appellant guilty of rape of a child. See, e.g., Letner v. State, 512 S.W.2d 643, 649 (Tenn. Crim. App. 1974)(observing that the uncorroborated testimony of a single witness will generally support a defendant's conviction); see also State v. McKnight, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994). Still, we note the appellant's intimation elsewhere in his brief that his conviction of rape of a child rests instead upon BV's testimony that the appellant placed his penis against her "private part" and "tried to" penetrate her "private part." The appellant's apparent confusion raises the specter of the election of offenses requirement.

Our supreme court has repeatedly held that, if the prosecution offers proof of multiple offenses in support of a single charged offense, it must elect the facts upon which it is relying to establish the charged offense. State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001); State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). Despite any confusion on the appellant's part, we believe that the evidence in this case established a single instance of penetration as defined by Tenn. Code Ann. § 39-13-501(7), namely the incident of fellatio. Cf. State v. Lee Lance, No. 03C01-9804-CR-00136, 1999 WL 301457, at **5-6 (Tenn. Crim. App. at Knoxville, May 14, 1999)(when combined with evidence that the victim had vaginal lacerations and a torn hymen, testimony that the appellant placed his penis "on" the victim's "private" sufficed to establish the offenses of rape of a child and incest). Moreover, to the extent the evidence established more than a single instance of penetration, counsel's closing arguments are not included in the record before this court. Accordingly, we cannot exclude the possibility that the prosecutor's closing argument effectively served as an election of offenses. See, e.g., State v. William Donald Ellis, __ S.W.3d __, No. M1999-783-CCA-R3-CD, 2000 WL 1520006, at *8 n. 2 (Tenn. Crim. App. at Nashville, October 13, 2000), perm. to appeal denied and recommended for publication, (Tenn. 2001). We note that, immediately prior to closing arguments and outside the jury's hearing, the prosecutor remarked to the trial court:

> The act that we're relying upon is the actual oral sex that she testified to in order to sustain a conviction for rape of a child, . . . The aggravated sexual battery would, of course, be the touching which she testified that he put his private on her private part and also touched her breast area and put his mouth on her breast area . . . .

Turning to the appellant's conviction of aggravated sexual battery, the State was required to prove the following essential elements beyond a reasonable doubt: (1) unlawful sexual contact with a victim by the defendant or the defendant by a victim; (2) the victim was less than thirteen years of age; and (3) the defendant acted either intentionally, knowingly, or recklessly. Tenn. Code Ann. § 39-13-504(a)(4) (1997); Tenn. Code Ann. § 39-11-301(c). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the

defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). Jurors "may use their common knowledge and experience" in determining whether the touching can reasonably be construed as motivated by a defendant's desire for sexual arousal or gratification. State v. Jack Warren Emert, Jr., No. 03C01-9802-CC-00074, 1999 WL 512029, at *2 (Tenn. Crim. App. at Knoxville, July 21, 1999); see also, e.g., State v. Tony Allen Leonard, No. E1999-00971-CCA-R3-CD, 2000 WL 1772468, at * 3 (Tenn. Crim. App. at Knoxville, December 1, 2000), perm. to appeal denied, (Tenn. 2001).

Again, BV testified at trial that she was less than thirteen years of age at the time of the appellant's offenses. Additionally, as indicated by the prosecutor, BV testified that the appellant not only forced her to perform fellatio upon him but also placed his penis against her "private part" "between [her] legs;" "touched [her private part] with his hands and mouth;" and "[p]ut his hands and mouth on [her] [breasts]." We reiterate that, in the absence of closing arguments from the record, we will assume that the prosecutor thereby clarified his reliance upon the incident of fellatio to establish the appellant's commission of the offense of rape of a child and his reliance upon the remaining conduct to establish the offense of aggravated sexual battery. As to the multiple incidents of touching underlying the appellant's conviction of aggravated sexual battery, our supreme court has recently held that, "[i]f [an] entire instance of sexual *contact* occurs quickly and virtually simultaneously, then only one offense [of sexual battery] has occurred, even if more than one touching has occurred." Johnson, 53 S.W.3d at 633 (emphasis added); see also State v. Randall Ray Mills, No. M2000-01065-CCA-R3-CD, 2001 WL 1246387, at *8 (Tenn. Crim. App. at Nashville, October 17, 2001). In short, the evidence supports the jury's finding that the appellant engaged in a single instance of aggravated sexual battery.

Finally, in order to obtain a conviction of incest, the State was required to establish beyond a reasonable doubt that (1) the appellant engaged in sexual penetration with BV as defined by Tenn. Code Ann. § 39-13-501(7); (2) the appellant knew that BV was his stepchild; and (3) the appellant acted intentionally, knowingly, or recklessly. Tenn. Code Ann. § 39-15-302(a)(1) (1997); Tenn. Code Ann. § 39-11-301(c). We have already concluded that the evidence adduced at the appellant's trial established his commission of a single act of penetration and the requisite accompanying mental state. Moreover, the appellant's own testimony established both his relationship with BV and his knowledge of the relationship at the time of these offenses. This issue is without merit.

### C. Lesser-Included Offenses

The appellant next contends that the trial court erred in denying his request that the jury be instructed on the lesser-included offense of attempt to commit rape of a child. The State essentially responds that the appellant has waived any argument concerning the need for an instruction on attempt to commit rape of a child as a lesser-included offense of rape of a child by relying in the trial court upon evidence underlying his indictment for aggravated sexual battery. The State further asserts that the evidence underlying the appellant's indictment for and subsequent conviction of rape of a child would not support a conviction of attempt to commit rape of a child.

We preliminarily note that the appellant failed to request instructions on any lesser-included offenses of the indicted offenses other than attempt to commit rape of a child, and the trial court declined to instruct the jury on any lesser-included offenses whatsoever. More to the point, the appellant only challenges in this appeal the trial court's failure to instruct the jury on attempt to commit rape of a child. Due to the appellant's failure to object to the trial court's refusal to instruct other lesser-included offenses, we will limit our discussion to the appellant's challenge in this appeal. Tenn. R. Crim. P. 52(b).

As remarked by the State, the appellant relied in the trial court upon evidence underlying his indictment for aggravated sexual battery to demonstrate the need for an instruction on attempt to commit rape of a child. Likewise, on appeal, the appellant partially relies on BV's testimony that the appellant placed his penis against her "private part" and "tried to" penetrate her "private part." It is not entirely clear from the record or the appellant's brief whether he believes that the State relied upon this testimony to establish the offense of rape of a child or, alternatively, he believes that attempt to commit rape of a child is a lesser-included offense of aggravated sexual battery. We have noted our disagreement with the former view. We also disagree with any suggestion that attempt to commit rape of a child is a lesser-included offense of aggravated sexual battery.

The essential elements of both aggravated sexual battery as charged in the indictment in this case and rape of a child are set forth in our preceding discussion of the sufficiency of the evidence adduced at trial, and we need not repeat them here. Both offenses are "nature-of-conduct offenses," in that "the offense[s] seek[] principally to proscribe the nature of the defendant's conduct, as opposed to the result that the defendant's conduct achieves." State v. Mateyko, 53 S.W.3d 666, 673 (Tenn. 2001). As relevant to nature-of-conduct offenses, Tenn. Code Ann. § 39-12-101 (1997) reads:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
> (1) Intentionally engages in action . . . that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be; . . . or
> (3) Acts with intent to complete a course of action . . . that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

In determining whether attempt to commit rape of a child is a lesser-included offense of aggravated sexual battery, we must apply the following test adopted by our supreme court in State v. Burns, 6 S.W.3d 453, 466-467 (Tenn. 1999):

> An offense is a lesser-included offense if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

-10-

(1) a different mental state indicating a lesser kind of culpability;  and/or

(2) a less serious harm or risk of harm to the same person, property or public interest;  or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b);  or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b);  or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Clearly, the offense of attempt to commit rape of a child is not a lesser-included offense of aggravated sexual battery pursuant to part (c) of the Burns test.  Moreover, all of the statutory elements of attempt to commit rape of a child are not included within the statutory elements of aggravated sexual battery if only because the offense of attempt to commit rape of a child requires a specific intent to engage in conduct constituting rape of a child.  Tenn. Code Ann. § 39-12-101, Sentencing Commission Comments; cf. Mateyko, 53 S.W.3d at 673-677.  Finally, this specific intent element establishes neither a mental state indicating a lesser kind of culpability than that inherent in the offense of aggravated sexual battery nor a less serious harm or risk of harm than that posed by the offense of aggravated sexual battery.  Accordingly, attempt to commit rape of a child is not a lesser-included offense of aggravated sexual battery.

That having been said, the appellant also relies on appeal on the testimony underlying his indictment for and conviction of rape of a child to demonstrate the need for an instruction on attempt to commit rape of a child.  In this regard, we must reject the State's claim of waiver, as a trial court's duty to charge a jury as to the law of each offense included in an indictment exists regardless of any request or objection by the appellant and, it necessarily follows, regardless of any deficiency in the appellant's argument before the trial court.  See, e.g., Burns, 6 S.W.3d at 464; State v. Bolden, 979 S.W.2d 587, 593 (Tenn. 1998); Tenn. Code Ann. § 40-18-110(a) (1997).  Under part (c) of the Burns test, attempt to commit rape of a child is a lesser-included offense of rape of a child.  Accordingly, the trial court was obligated to instruct the jury on attempt to commit rape of a child if there existed evidence that reasonable minds could accept as to the lesser-included offense, and this evidence was legally sufficient to support a conviction of the lesser-included offense.  Burns, 6 S.W.3d at 469.

Again, in order to prove the appellant's commission of the offense of rape of a child, the State presented BV's testimony that she was forced to perform fellatio upon the appellant.  As noted by the appellant, BV initially indicated that the appellant "made me put my mouth *on* his private part."  (Emphasis added).  Subsequently, however, the prosecutor engaged in the following colloquy with BV:

-11-

| | |
|---|---|
| Prosecutor: | Just to be clear now, you said he put his private part in your mouth. Is that right? |
| BV: | Yes, Sir. |
| Prosecutor: | Now, that's - - When you talk about his private part, - - |
| BV: | Yes, sir. |
| Prosecutor: | - - is that his penis? |
| BV: | Yes, sir. |
| Prosecutor: | And you put that in your mouth? |
| BV: | Yes, sir. |

We must view the evidence "liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence." Id. We therefore conclude that the evidence required an instruction on the offense of attempt to commit rape of a child. Specifically, the victim's testimony on direct examination that she put her "mouth on [the appellant's] private part," when viewed in a light favoring the existence of the lesser-included offense, would support a finding of guilt of attempt to commit rape of a child. In this regard, we emphasize that "[w]hether sufficient evidence supports a conviction of the charged offense does not affect the trial court's duty to instruct on the lesser offense if evidence also supports a finding of guilt on the lesser offense." Id. at 471-472; see also State v. Bowles, 52 S.W.3d 69, 80 (Tenn. 2001); State v. Swindle, 30 S.W.3d 289, 293 (Tenn. 2000). We further note that the failure to commit the offense attempted is not an essential element of criminal attempt. Tenn. Code Ann. § 39-12-101(c); cf. Swindle, 30 S.W.3d at 293. Finally, we cannot conclude beyond a reasonable doubt that the trial court's error was harmless as the jury was not afforded an opportunity to consider any intermediate lesser-included offense. Bowles, 52 S.W.3d at 80-81; State v. Ely, 48 S.W.3d 710, 714-715 & 727 (Tenn.), cert. denied, __ U.S. __, 122 S. Ct. 408 (2001).

### III. Conclusion

For the foregoing reasons, we affirm the judgments of the trial court underlying the appellant's convictions of aggravated sexual battery and incest, but we reverse the judgment underlying the appellant's conviction of rape of a child and remand this case to the trial court for a new trial on the charge of rape of a child.

_____
NORMA McGEE OGLE, JUDGE

-12-