IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1998 SESSION



**FILED**

**November 5, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 02C01-9708-CC-00305 |
| | ) | |
| Appellee | ) | |
| | ) | HENRY COUNTY |
| V. | ) | |
| | ) | HON. JULIAN P. GUINN, |
| JEFFERY MARTIN WALLACE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Sexual Battery) |
| | ) | |
| | ) | |

For the Appellant:

Guy T. Wilkinson
District Public Defender
P.O. Box 663
Camden, TN 38320

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

G. Robert Radford
District Attorney General

Todd A. Rose
Assistant District Attorney
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED: _____

AFFIRMED

William M. Barker, Special Judge

**OPINION**

The appellant, Jeffery Martin Wallace, appeals as of right from his conviction of aggravated sexual battery by a Henry County jury. Appellant was sentenced to serve eight years in prison as a Range I offender for the Class B felony. On appeal, appellant challenges the sufficiency of the evidence and the trial court's exclusion of evidence relative to the victim's prior sexual knowledge. We are of the opinion that no reversible error appears in the record and affirm the judgment of the trial court.

On April 20, 1996, D.W., the eleven-year-old victim,[1] her mother, and her brother were moving into a trailer they had just rented in Paris. That afternoon, D.W.'s mother went to Gleason and left D.W. in the care of a neighbor. While at the neighbor's home, D.W. noticed that appellant, who was her father, had arrived at her aunt's house just down the street. She went to the house and talked to the appellant. D.W. testified that her father was crying and upset and talking about his desire to reconcile with her mother, from whom he had been divorced since 1992. In hopes of improving his disposition, D.W. offered to show appellant their new residence.

They went to the trailer, where the landlord was repairing a broken window, and D.W. introduced him to appellant. Appellant began asking D.W. if she wanted to kill the landlord and she said, "No." D.W. testified that appellant had been drinking that day. They began looking around the trailer and appellant went into the bedroom and sat in a chair, the only piece of furniture in the room. D.W. sat down in the floor and appellant said, "You are my blood, you are my blood, and are you willing to do anything for me?" D.W. replied, "Yes." Appellant kept repeating the question and asking if she was sure. Then he exposed himself to her and said, "Come here." She refused. Appellant zipped his pants and asked D.W. to give him a hug. Thinking it was safe, D.W. testified that she hugged appellant. When she did, he grabbed her

---

[1]It is the policy of this Court to refer to minor victims of sexual abuse by their initials only. State v. Schimpf, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

buttocks and pulled her down on his left leg. Appellant put his left arm around her and touched her breast. He rubbed her thigh up to her private area with his right hand. Then appellant put his hand on the button to her shorts and tried to unfasten them. D.W. resisted by pushing his hand away. He kept trying and she ran out of the trailer.

D.W. ran first to her aunt's house, but she was not at home. She kept running and wound up on Market Street. As she crossed the road, she noticed her mother's car coming down the street. D.W. got in the car with her mother and told her what had happened. They reported the incident to the authorities and appellant was arrested later that evening.

Gary Vandiver, an investigator with the Henry County Sheriff's Department, testified that appellant was apprehended about 7:30 p.m. on the evening of the incident. Vandiver stated that appellant was very intoxicated and became belligerent when informed of the charge against him. Because of his level of intoxication, Vandiver waited until the next day to interview the appellant.

On April 21, appellant gave a statement in which he said he hugged the victim and squeezed her leg, as he always did, but that he did not remember anything else. Appellant also stated that he has never known the victim to lie and if she said that something happened, it probably did. Appellant did not deny assaulting the victim.

Appellant testified similarly at the trial and stated that he did not remember what happened at the trailer. On the day of the incident, he had been drinking since the morning and started out with a case of beer. As in his statement, he testified that he remembered asking the victim for a hug. He stated that she sat down on his leg; he put his arm around her and hugged her. Then the victim left. He testified that if anything else happened, he did not remember it.

The jury found appellant guilty of aggravated sexual battery and the trial court later sentenced him to serve the minimum sentence of eight years in the Department of Correction.

3

Appellant first contends that the evidence is insufficient to support his conviction. Specifically, he argues that his level of intoxication interfered with his ability to form the requisite *mens rea*. We disagree.

As applicable in appellant's case, aggravated sexual battery is defined as unlawful sexual contact with a victim by the defendant when the victim is less than thirteen years of age. Tenn. Code Ann. §39-13-504(a)(4) (Supp. 1996). Sexual contact is further defined as

> the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. §39-13-501(6) (1991). Because of his extreme level of intoxication, appellant claims that the alleged touching could not have been intentional.

While voluntary intoxication is not a defense to the commission of an offense, it is admissible when relevant to negate a culpable mental state. Tenn. Code Ann. §39-11-503(a) (1991). Whether the defendant's level of intoxication is of such a degree to negate the required mental state, however, is a question for the jury to decide. State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985); State v. Givens, 631 S.W.2d 720, 721 (Tenn. Crim. App. 1982). In essence, the determinative question is not whether the accused was intoxicated, but what was his mental capacity at the time of the incident. Harrell v. State, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979).

The record before us is replete with testimony that the appellant was intoxicated on the day of the incident. The victim, her mother, and Officer Vandiver all testified that appellant was drunk that day. The appellant also testified that he drank a case of beer the morning of the incident and was intoxicated. Nevertheless, it was the jury's duty to consider all of the evidence and determine whether appellant's intoxication interfered with his mental state to such a degree that he was unable to form the intent necessary to commit the offense. By its verdict, the jury obviously

4

found that the appellant acted intentionally.[2]  We will not disturb the jury's factual finding on appeal.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The guilty verdict, implicitly finding that appellant acted intentionally, is supported by the evidence.  The victim provided uncontradicted testimony that the appellant first exposed himself and then touched her in inappropriate places.  Appellant never denied the incident, but rather said that he did not remember sexually assaulting the victim.  The mere inability to remember, after being accused, is no proof of the mental condition of the appellant when the offense was actually committed.  See Harrell, 593 S.W.2d at 672.  Without some proof of how the appellant's intoxication affected his mental capacity to form the requisite *mens rea*, the jury was entitled to reject appellant's claims.

Appellant's remaining issue is a challenge to the trial court's ruling excluding evidence of a prior sexual encounter the victim experienced with an older cousin.  Following a brief jury-out hearing, the trial court held that the disputed evidence should be excluded pursuant to Rule 412 of the Tennessee Rules of Evidence.  We agree with the trial court.

From a statement the victim gave to the Department of Children's Services, appellant learned that the victim's cousin, who is five or six years older than she, had tried to fondle her on several occasions.  According to her statement, the victim recognized the impropriety and told her mother of the attempts.  The victim stated that the relative had been punished for his conduct.  Appellant's counsel sought to question the victim about her statement saying, "It's similar to what is testifying as to what my client is alleged to have done."

Evidence of a victim's sexual behavior other than the sexual act at issue in the case on trial when an accused is on trial for aggravated rape, rape, aggravated sexual

---

[2]Since the appellant does not complain of inadequate or incomplete jury instructions, the trial court's jury charge is not a part of the record.  Therefore, we presume that the jury was properly instructed on voluntary intoxication.  State v. Boling, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992).

5

battery, or spousal sexual offenses is governed by Tennessee Rule of Evidence 412. See State v. Sheline, 955 S.W.2d 42, 44 (Tenn. 1997), cert. denied ___ U.S. ___, 118 S.Ct. 1199, 140 L.Ed.2d 327 (1998). The rule limits the admissibility of evidence of specific acts of sexual conduct of the victim, as well as evidence of the victim's sexual reputation.

At issue in appellant's case is the provision which may permit the admission of sexual behavior of the victim with persons other than the defendant "to prove or explain the source of semen, injury, disease, or knowledge of sexual matters." Tenn. R. Evid. 412(c)(4)(ii). "Knowledge of sexual matters" is often sought to be introduced in child sexual abuse cases. Where the State's proof suggests that the child victim's knowledge of sexual matters resulted solely from the incident with the defendant, the defendant is permitted to show that the victim acquired the familiarity from sexual activity with third persons. Tenn. R. Evid. 412 Advisory Commission Comments.

However, before evidence regarding a victim's "knowledge of sexual matters" is admissible, the trial court must first determine that the probative value of the evidence outweighs its unfair prejudice to the victim. Tenn. R. Evid. 412(d)(4). By comments the trial court made in holding the evidence inadmissible, it is apparent that the court below found the out-of-court statement of the victim had no probative value. We agree with the trial court's conclusion in that respect.

The victim's statement about the incidents with her cousin did not demonstrate an extraordinary knowledge of sexual behavior or vocabulary that would be unusual for an eleven-year-old child. The fact that a cousin had attempted to fondle the victim fails to demonstrate some particularized knowledge of sexual matters that she would not normally possess. In light of the trial testimony that appellant exposed himself to her, grabbed her buttocks, fondled her breast over her clothing, and tried to unfasten her shorts, we fail to see how the proffered evidence would have lessened appellant's culpability. This issue is without merit.

Having determined the evidence is sufficient to support appellant's conviction and that the trial court properly ruled on the evidentiary issue, we affirm the judgment of the trial court.

_____
William M. Barker, Special Judge

CONCUR:

_____
David G. Hayes, Judge


_____
Joe G. Riley, Judge