IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 10, 2015 Session

## STATE OF TENNESSEE v. JAMES EDWARD CHURCH

**Appeal from the Criminal Court for Davidson County**
**No. 2013A410      Monte Watkins, Judge**

_____

**No. M2014-01306-CCA-R3-CD – Filed February 10, 2016**

_____

Defendant, James Edward Church, was indicted by the Davidson County Grand Jury for three counts of rape of a child in Counts 1-3, five counts of aggravated sexual battery in Counts 4-8, and two counts of sexual battery by an authority figure in Counts 9-10. Upon motion by the State, Counts 9 and 10 were stricken from the indictment. Upon the State's election of offenses, Count 3 was amended to allege aggravated sexual battery. A jury found Defendant guilty as charged on all counts. Following a sentencing hearing, the trial court imposed an effective sentence of 60 years to be served at 100 percent. Defendant appeals his convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right, Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Richard C. Strong, Nashville, Tennessee, for the Appellant, James Edward Church.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**FACTS**

In order to protect the identity of the victims, the victims of these sexual offenses and certain witnesses are identified by their initials. M.P., the paternal grandmother of one of the victims in this case, R.P., testified that both of R.P.'s parents were deceased.

R.P. and K.H. had the same mother, but different fathers. Before her mother's death, R.P. lived with her mother and her half-sister, K.H., the other victim in this case. When R.P.'s and K.H.'s mother died in 2004, M.P. got custody of R.P., and K.H. lived with her maternal grandmother, D.H., in a home she shared with Defendant. R.P. visited her half sister at D.H.'s home every other weekend, during holidays, and for part of the summer. When R.P. was in fifth grade, she told M.P. that she no longer wanted to go to D.H.'s home. M.P. testified that R.P. had been "having behavior issues and she was not doing well in school[.]" M.P. attributed the issues to the death of R.P.'s parents. R.P. was receiving counseling. M.P. discovered that R.P. had made sexual abuse allegations against Defendant when M.P. was contacted by Cheatham County Department of Children's Services ("DCS").

R.P. was 15 years old at the time of trial. She testified that after her mother died, she went to live with her grandmother, M.P. When she visited her maternal grandmother, D.H., she shared a room with her sister, K.H. They slept in twin beds. D.H. slept in her bedroom with Defendant, who was her boyfriend. R.P. testified that she and K.H. had been molested by Defendant.

R.P. testified that the first time she remembered Defendant touching her inappropriately happened in the hallway of the funeral home after her mother died. She testified, "[h]e was holding me by my private and he was just touching me that way and he was like rubbing me and all that I didn't like it." R.P. asked Defendant to put her down, and Defendant told her that she would get in trouble if she told anyone. R.P. was four or five years old at that time.

R.P. testified that Defendant touched her "a lot of times" when she was visiting D.H's home. R.P. recalled one incident when Defendant came into her bedroom and asked her what kind of cell phone she wanted. Defendant pulled her pants down and touched her vagina while he was talking to her. Defendant also touched her chest under her shirt. R.P. testified that Defendant touched her on another occasion, but Defendant did not say anything to her. She testified that on another occasion, Defendant put R.P.'s hand on his penis. She testified that Defendant "squeezed [her] hand over his so [she] would hold it." R.P. testified that on the occasions Defendant would touch her, D.H. was asleep in her bedroom. R.P. testified that she did not see Defendant sexually abuse K.H.

R.P. identified on a drawing of a girl's body that Defendant touched her "inside the line," indicating the female genitalia. R.P. also testified that Defendant "would sit around the house, on the couch, exposing himself through the side of his shorts." She testified that on one occasion, she was taking a bath, and Defendant came into the bathroom "and play[ed] with himself and ma[d]e [her] watch." She testified that D.H. asked her about the sexual abuse. She testified, "she started yelling at me and asking me

2

what I knew about it and what had happened to me. And I just started crying because she kept yelling at me." R.P. told D.H. what Defendant had done to her, and D.H. told R.P. that she did not believe her. R.P. stopped going to D.H.'s house for visitation when she was in fifth grade.

R.P. testified that sometime after she had stopped visiting D.H.'s house, she called a crisis hotline to talk about the sexual abuse and other things that were going on in her life. Afterwards, sometime around Christmas 2011, R.P. learned that the allegations of sexual abuse had been reported to DCS. She gave an interview. R.P. testified that she did not tell D.H. sooner because she "was told not to tell and [she] was scared."

K.H. testified that she was 20 years old at the time of trial. K.H. was almost 11 years old when her mother died and her grandmother obtained custody of her. She lived with D.H. and Defendant until she moved to Indiana at the age of 16. K.H. testified that her half-sister R.P. visited on weekends, and they shared a room with separate beds.

K.H. testified that one night, Defendant came into her room, and he raised her shirt and touched her breast. K.H. pretended to be asleep. The second time it happened, K.H. turned her TV on and off "to scare him away but it didn't work." On another occasion, Defendant stood in K.H.'s bedroom and masturbated. K.H. testified that Defendant also reached under K.H.'s bed covers and rubbed her thigh and "private area" on top of her clothing. On another occasion, K.H. was taking a shower and she saw Defendant looking at her through the bathroom window. K.H. testified that these incidents happened two or three times per month from the time she was 11 years old until age 13.

K.H. testified that she saw Defendant raise R.P.'s shirt and touch her breast. K.H. and R.P. talked to each other about the abuse. K.H. believed that if they told their grandmother D.H., she would not believe them and "would just get mad." K.H. testified that when they told D.H., "she started yelling and cussing." Defendant was present when they told D.H., and he "said it was because he was drinking."

K.H. also testified that Defendant would expose his penis to her. She testified, "he'd have it out of the side of his shorts whenever we'd come in from school." K.H. testified that she did not tell anyone else because she was afraid and she "didn't want [D.H.] to be mad" at her. K.H. learned that the abuse had been reported to DCS after she moved to Indiana. D.H. called her and told her that Defendant "was taken to jail for what he did back when we lived on Norton." D.H. told K.H. to call R.P. "and sort it out and see what was going on." D.H. also told K.H. to tell the police "that it didn't happen."

Detective Robert Carrigan, a Metro Nashville police officer, testified that he became involved in the case in early 2012, about two months after DCS received a

referral involving R.P. R.P. had already been interviewed by DCS, and Defendant and D.H. were aware of the allegations. Detective Carrigan went to the home of Defendant and D.H. and interviewed them separately. Detective Carrigan testified that Defendant was cooperative and denied having any type of inappropriate contact with R.P. or K.H. D.H. stated that she did not believe the allegations. Defendant and D.H. told Detective Carrigan to call K.H. and that she would tell him that R.P. was lying about the allegations. Detective Carrigan called K.H. and conducted a recorded phone interview of her. Detective Carrigan also arranged a controlled phone call between K.H. and Defendant. A recording of the phone call was played for the jury. In the phone conversation between Defendant and K.H., K.H. told Defendant that she "talked to the police and told them that [R.P.] was lying." Defendant thanked her. K.H. asked Defendant, "Why did you do it?" Defendant answered, "Well, I am sorry . . . I was drinking heavy back then." In the phone conversation, K.H. did not specifically refer to the sexual abuse allegations.

Defendant did not testify or present any evidence at trial.

## ANALYSIS

On appeal, Defendant raises the following issues for our review: 1) whether the trial court erred in denying Defendant's motion to sever the offenses; 2) whether the trial court erred in denying Defendant's motion to be permitted to cross-examine the victim K.H. regarding her past accusations of sexual abuse by others; 3) whether the trial court violated Defendant's right to due process by denying him access to notes of an interview of R.P. conducted by an assistant district attorney; 4) whether the evidence was sufficient to sustain Defendant's convictions; and 5) whether the trial court erred by imposing consecutive sentencing.

### *Severance*

Defendant was tried by the jury on eight counts of the indictment. Counts 1 through 6 involved R.P. as the victim. Counts 7 and 8 involved K.H. as the victim. Prior to the trial, Defendant filed a motion for the trial court to sever the offenses involving R.P. and K.H. for two separate trials.

A hearing on the motion to sever was held on June 20, 2013. At the conclusion of that hearing, the trial court stated,

> Now, with respect to the severance: I will take a look at that. But, there
> [are] a number of cases involving young victims, sisters, in particular,
> who have been abused, sexually abused. And I've presided over those

4

cases. The one pointed out by the General, *Collazo*; another one I could think of is *Guilfoy*. And there have been others, I'm sure. But I will take a look at what's provided to me before I make a determination.

The trial court's minute entry for June 20, 2013, states that the motion to sever was taken under advisement and that the case was continued until January 27, 2014. There is no order or minute entry in the record which pertains to any ruling by the trial court on Defendant's motion for severance of offenses. There is nothing in any of the transcripts in the record which reflect the trial court's ruling on the severance motion. After oral arguments, this court entered an order which directed the trial court clerk to supplement the appellate record with "the trial court's written order disposing of Defendant's motion for severance." Our order also directed the trial court clerk to supplement the appellate record with what had been designated as late-filed collective Exhibit 1 at the hearing on the severance motion. In response, a deputy clerk in the trial court clerk's office filed an affidavit which states in full:

## AFFIDAVIT

I, the undersigned, Heather Barr, Deputy Court Clerk for the Davidson County Criminal Court Clerk's Office, am responsible for preparing the record on appeal in the above case and have discovered that there was no order ever done and no exhibits late-filed.

However, it is believed that exhibit numbers 2 and 3 which were ID only during the jury trial may in fact be the exhibits that were meant to be late-filed and weren't but have been retained in this office.

Defendant's trial counsel was allowed to withdraw as attorney of record at the hearing on Defendant's motion for a new trial, and Defendant's current attorney on appeal was simultaneously appointed to represent Defendant. In response to this court's order regarding supplementation of the record, current counsel filed a responsive pleading and the affidavit of Defendant's trial counsel. In his pleading, appellate counsel stated he had investigated the status of the record in the trial court and that "it appears that the trial court did not enter a written or oral ruling on [Defendant's] Motion to Sever." Appellate counsel also stated that "it appears that [Defendant's] trial counsel did not submit the exhibits identified in the record of the motion hearing for late-filing."

Trial counsel's affidavit states in full:

AFFIDAVIT

STATE OF TENNESSEE}
COUNTY OF DAVIDSON}

Comes, Manuel Benjamin Russ, having been duly sworn in accordance with law, and states as follows:

1. I was counsel for the Appellant, James Edward Church, at the trial of this matter.
2. On June 20, 2013, I filed a Motion to Sever with the Trial Court seeking to sever Counts 7 and 8 from Counts 1 to 6 of the Indictment.
3. At the hearing on the Motion, I moved for the audio-taped interview with the alleged victim K.H. and the video-taped forensic interview of alleged victim R.P. to be entered as evidence.
4. At the time of the Motion hearing, I was in possession of the audio-taped interview of K.H.
5. However, the forensic interview of R.P. was in the sole custody of the State.
6. I moved to have the two interviews to be filed as late-filed exhibits to the Motion.
7. I failed to have a copy of the interview with K.H. filed with the Court.
8. To my knowledge, the State never provided a copy of the forensic interview of R.P. to the trial court.
9. The forensic interview of R.P. remained solely in the possession of the State at all times, and I was never in a possession of that DVD.
10. Upon my recollection, no Order by the trial court, granting or denying my Motion to Sever was ever entered.
11. The two interviews in question were marked as Exhibit 1 and 2 at the trial of this matter for Identification only. They are available from the trial court clerk's office.
12. The above Statements are true.

/s/ Manuel B. Russ
MANUEL BENJAMIN RUSS
TRIAL COUNSEL FOR [DEFENDANT]

6

The trial transcript shows that defense counsel announced Defendant was ready to proceed with the trial when the case was called out by the trial court. Several motions in limine filed on behalf of Defendant were ruled on by the trial court prior to the pool of jurors being brought to the courtroom for jury selection. Neither Defendant's trial counsel, nor the State's counsel, nor the trial court mentioned or alluded to any ruling on the motion to sever offenses. The trial began without any counts being severed.

We can assume from the record that *if the trial court ever ruled on the motion for severance*, that the motion was denied because all eight counts were tried together. However, with the information in the record, we would be basing an assumption that the trial court actually ruled on the severance motion entirely upon our own speculation. Nothing in the transcripts indicates that the trial court ever ruled on the motion. There is no order disposing of the motion in the appellate record. The trial court deputy clerk signed an affidavit stating in part "I . . . have discovered that there was no order ever done." Trial counsel signed an affidavit that states in part, "Upon my recollection, no Order by the trial court, granting or denying my Motion to Sever was ever entered."

Concerning motions to sever offenses already joined in an indictment, or consolidating offenses charged in separate indictments, there is "both the need for a hearing and the equally important requirement that the trial court support its ensuing ruling with findings of fact and conclusion of law." *State v. Garrett*, 331 S.W.3d 392, 403 (Tenn. 2011).

Nothing could be any clearer than the responsibility of a trial court to rule (before the trial begins) on a pre-trial motion that the trial court has taken under advisement. Similarly, defense counsel who has filed a motion for severance of offenses on which an evidentiary hearing has been held and the motion has been taken under advisement, should at a minimum request, on the record, that the trial court issue its ruling, supported by findings of fact and conclusions of law, prior to the beginning of the trial.

We have done everything we can do in order to supplement the record so that we can address this use on the merits. We concluded in our previously mentioned Order for supplementation of the appellate record the following directive to Defendant's current counsel:

> If for any reason(s) the trial court clerk is unable to include either item[] in the supplemental record herein order[ed], counsel for Defendant shall file with this court within twenty-five (25) days of the date of this order an appropriate pleading setting forth the specific reasons the entire supplemented record cannot be filed within the deadline imposed.

7

After providing facts regarding the status of whether an order existed which ruled on the motion for severance and whether the late-filed exhibit had actually been filed, Defendant's appellate counsel concluded,

> [Defendant], through counsel, respectfully requests this Court to advise him how it wishes him to proceed in regards to supplementing the record.

This court normally does not "advise" counsel on how to practice law in representing counsel's clients in this court, and we will not do so in this case. All that we can tell from the appellate record is that *if* the trial court did rule on Defendant's motion to sever, nobody involved has informed this court of what the ruling was and what, if any, findings of fact and conclusions of law were made by the trial court in support of its ruling. Appellate counsel's pleading was filed August 21, 2015.

This court ordered the trial court clerk to prepare a supplemental record containing the two interviews, which were supposed to be late-filed exhibits to the hearing on the severance motion, but were not filed as such. They were filed during the *trial* as documents *for identification only*. Defendant's counsel and the State were given notice that this court ordered the record supplemented with these exhibits marked for identification only. The exhibits in this supplemental record are in an electronic format and have not been transcribed. Defense counsel has taken no steps to file a supplemental brief to cite to any portion of these interviews that support his argument that the trial court erred by not granting a severance.

This case was orally argued in this court two years after the trial court heard the motion for severance and took the matter under advisement. At this late date we will not *sua sponte* take any action directing the trial court to render a ruling in writing, supported by findings of fact and conclusions of law.

We conclude that Defendant's issue regarding his motion to sever offenses is waived because the appellate record is not adequate for review. An appellant has the duty of preparing a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis of the appeal. Tenn. R. App. P. 24(b). When the record is incomplete, or does not contain the proceedings relevant to an issue, this court is precluded from considering the issue. *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Defendant is ultimately, however, not without any possible means to seek relief. Defendant, within the appropriate time period, may decide to seek relief pursuant to the Post-Conviction Relief Act.

8

For the above reasons, Defendant is not entitled to relief on this issue.

### *Evidence of Victim's Prior Sexual Assault Allegations*

Defendant asserts that the trial court erred by denying his motion to introduce evidence of the victim K.H.'s prior allegations of sexual abuse by two other people. The State responds that Defendant has waived review of this issue because he did not specifically include in his motion for new trial the issue he raises in this appeal. Prior to trial, Defendant filed two motions, one seeking to introduce evidence of "prior false allegations" of sexual abuse by K.H. under Tennessee Rule of Evidence 404(b), and another motion seeking to introduce evidence of specific instances of sexual conduct by the victim K.H. under Rule 412. In his motion for new trial, Defendant asserted that "[t]he trial court erred in denying [Defendant]'s motion to admit evidence pursuant to Tennessee Rule of Evidence 412." On appeal, Defendant asserts that he should have been allowed to introduce evidence of specific instances of the victim's sexual conduct as probative of the victim's character for truthfulness under Tennessee Rule of Evidence 608.

"It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal." *State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001); *see also State v. Dooley*, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000). Accordingly, this issue is waived. *See* Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Notwithstanding Defendant's waiver of this issue, we conclude that Defendant is not entitled to relief on the issue.

The admissibility of evidence pursuant to Tennessee Rule of Evidence 412 rests in the discretion of the trial court. *State v. Sheline*, 955 S.W.2d 42, 46 (Tenn. 1997). Evidence of specific instances of an aggravated sexual battery victim's "sexual behavior" is generally inadmissible unless it falls into one of several certain narrow exceptions. Tenn. R. Evid. 412. One of these exceptions is that evidence of a victim's sexual behavior "with persons other than the accused" is admissible "to prove or explain . . . knowledge of sexual matters." Tenn. R. Evid. 412(c)(4)(ii). This provision "will most frequently be used in cases where the victim is a young child who testifies in detail about sexual activity." Tenn. R. Evid. 412, Advisory Comm'n Cmts. The Advisory Commission Comments explain that to "disprove any suggestion that the child acquired

9

the detailed information about sexual matters from the encounter with the accused, the defense may want to prove that the child learned the terminology as the result of sexual activity with third parties." *Id.* Rule 412 broadly defines sexual behavior as "sexual activity of the alleged victim other than the sexual act at issue in the case." Tenn. R. Evid. 412(a).

Before evidence of specific instances of a victim's sexual behavior may be admitted at trial, certain procedural requirements must be met. The defendant must file a written motion ten days prior to trial, accompanied by an offer of proof describing the specific evidence and the purpose for introducing it. Tenn. R. Evid. 412(d)(1). After notice has been given, the trial court must conduct a jury-out hearing to determine whether the evidence is admissible. Tenn. R. Evid. 412(d)(2). Here, the Defendant properly followed the procedural requirements of Rule 412. However, even if these requirements are satisfied, before admitting such evidence, the trial court must also determine that the probative value of the evidence outweighs its unfair prejudice to the victim. *See id.* 412(d)(4).

Defendant's offer of proof included case summaries of two DCS referrals concerning the victim K.H. A referral from 2004 alleged that she was sexually assaulted by a juvenile. According to the report, an investigation resulted in an admission from the juvenile. The case summary stated that the case was "indicated" but that there was not enough evidence for criminal prosecution. In a 2005 referral, the victim stated that her mother's boyfriend made her watch a pornographic movie and touched her breast. The case summary stated that the case was "closed," but did not provide a reason.

In a written order, the trial court denied Defendant's motion, ruling that evidence of K.H.'s prior sexual abuse allegations was admissible only as rebuttal evidence as to the victim's credibility if the State presented evidence of the victim's sexual behavior. On appeal, Defendant contends that the trial court denied him the right to cross-examine K.H. about the prior allegations, which Defendant asserts were false.

A defendant's "constitutional right to confront the witnesses against him includes the right to conduct meaningful cross-examination." *State v. Wyrick*, 62 S.W.3d 751, 770 (Tenn. Crim. App. 2001) (citing *Pennsylvania v. Richie*, 480 U.S. 39, 51 (1987); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn. 2000); and *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn. 1992)). "The propriety, scope, manner, and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). Therefore, an appellate court "will not disturb the limits placed upon the cross-examination by the trial court, unless the trial court has unreasonably restricted the right." *State v. Reid*, 213 S.W.3d 792, 839 (Tenn. 2006) (citing *Dishman*, 915 S.W.2d at 463). However, the right to confrontation

"does not mean that a defendant has a right to present irrelevant evidence." *Sheline*, 955 S.W.2d at 47.

The State relies on *State v. Wyrick* to argue that a prior false allegation of sexual abuse is not governed by Tennessee Rule of Evidence 412. In *Wyrick*, this court held that a victim's prior false accusation of rape did not constitute "sexual behavior" as defined under Rule 412. *Id.* at 771. The court emphasized that "'[i]n the absence of proof that [the victim] falsified the other allegation,'" the prior allegation is immaterial and inadmissible at trial. *Id.* at 780 (quoting *State v. Willis*, 735 S.W.2d 818, 822 (Tenn. Crim. App. 1987)). Instead, prior false reports of a sex crime "are relevant to a witness's credibility." *Id.* Therefore, they may be admissible under Tenn. R. Evid. 608(b). Specific instances of conduct may be used to impeach a witness during cross-examination if the conduct is probative of the witness's character for truthfulness or untruthfulness. *Id.* The conduct may not be proven by extrinsic evidence if the witness denies the conduct. *Id.* "Before a witness can be questioned about the specific instance of conduct, the court, upon request, must hold a jury-out hearing 'to determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry.'" *Id.* (quoting Tenn. R. Evid. 608(b)(1)).

Here, there was no clear and convincing evidence that the prior false accusations occurred. Defendant did not provide any evidence that the information in the DCS referrals was not true. In one of the DCS cases, the juvenile perpetrator admitted sexual contact with the victim, but the investigators deemed the evidence insufficient for prosecution. In the other case, the report indicated that the case was closed, and no reason was given. Defendant did not call any witnesses to testify at the hearing on his motions that the allegations were truthful or untruthful. Absent any clear and convincing proof that the victim falsified the prior allegations, "then the fact that she accused another person of committing another sexual offense against her is immaterial." *State v. Willis*, 735 S.W.2d 818, 822 (Tenn. Crim. App. 1987). Any previous sexual abuse suffered by the victim "would in no way reflect adversely on her credibility" and would therefore be irrelevant. *Id.* "Evidence which is not relevant is not admissible." Tenn. R. Evid. 402.

Without proof that the allegation was false, we conclude that the trial court did not abuse its discretion. The defendant is not entitled to relief on this issue.

### Prosecutor's Notes from Interview with the Victim

Defendant asserts that the trial court violated his right to due process by denying him access to notes from an interview of R.P. conducted by the State. Defendant argues that the interview contained statements that were inconsistent with R.P.'s forensic interview, and that it was therefore exculpatory impeachment evidence. The State

responds that Defendant failed to show a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) or Tennessee Rule of Criminal Procedure 16, and thus, he is not entitled to relief.

Prior to trial, Defendant filed a "Motion for Production of Exculpatory and Favorable Evidence." In his motion, Defendant asserted that R.P. made disclosures of penetration by Defendant in an interview by the prosecutor that she did not make during her forensic interview with DCS. In the State's response to Defendant's motion, the State argued that the prosecutor's notes from the interview were not discoverable because they were work product. The trial court denied Defendant's motion and ruled that the prosecutor's notes from the interview were work product and therefore not discoverable under Rule 16. The court also ruled that the notes were not a "statement" as contemplated by Rule 26.2 because the witness did not sign, adopt, or approve the writing as her statement.

In *Brady v. Maryland*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). "Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and *evidence that could be used to impeach the [S]tate's witnesses*." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001) (citations omitted) (emphasis added).

To prove a *Brady* violation, a defendant must demonstrate the following: (1) he requested the information (unless the evidence is obviously exculpatory, in which case the State is obligated to release such evidence regardless of whether or not it was requested); (2) the State suppressed the information; (3) the information was favorable to the defendant; and (4) the information was material. *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995). Evidence is deemed material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). In determining whether a defendant had adequately proven the materiality of favorable evidence suppressed by the State, "a reviewing court must determine whether the defendant has shown that 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence of the verdict.'" *Johnson*, 38 S.W.3d at 58 (quoting *Irick v. State*, 973 S.W.2d 643, 657 (Tenn. Crim. App. 1998). *Brady* does not require the prosecution "to disclose information that the accused already possesses or is able to obtain." *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992).

Defendant asserts that the notes from the victim's interview were potentially exculpatory and should have been disclosed. The record indicates that the prosecutor

12

informed Defendant of the content of the interview. The trial court noted, "if [the State] ha[s] disclosed to you the nature of the statement, that's, really, sufficient." Therefore, Defendant was not prohibited from cross-examining the victim about the substance of her interview.

Defendant also argues that the State's failure to disclose the forensic interview summary violated Rule 16 of the Tennessee Rules of Criminal Procedure which governs pretrial discovery of evidence. Under Tennessee Rule of Criminal Procedure 16(a)(1)(F), "[u]pon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control. . . ." Tenn. R. Crim. P. 16(a)(1)(F). Rule 16(a)(2) precludes, however, "the discovery or inspection of reports, memoranda, or other internal state documents made by the district attorney general or other state agents or law enforcement officers in connection with investigating or prosecuting the case. Nor does this rule authorize discovery of statements made by state witnesses or prospective state witnesses." Tenn. R. Crim. P. 16(a)(2).

Tennessee Rule of Criminal Procedure 26.2 governs the production of witness statements. Rule 26.2 provides that on motion of a party who did not call the witness, the trial court shall order the opposing party "to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Tenn. R. Crim. P. 26.2(a). Under Rule 26.2, the state has no obligation to provide a defendant with a copy of a witness statement until after the witness has testified. *Id.*; *see also State v. Taylor*, 771 S.W.2d 387, 394 (Tenn. 1989) (holding that there is "no constitutional requirement that the State provide witnesses' statements prior to trial. The State has no obligation to produce statements of a witness until the conclusion of the witness' testimony on direct examination."). Rule 26.2(f) defines "statement" as follows:

> (1) A written statement that the witness makes and signs, or otherwise adopts or approves; or
> (2) A substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in a stenographic, mechanical, electrical, or other recording or a transcription of such a statement.

The prosecutor's notes from the State's interview of the victim do not meet the definition of a "statement" under Rule 26.2 because the notes were not signed or adopted by the victim, and they are not a verbatim recording of what the victim said. As such, the State had no obligation to produce the notes under Rule 26.2.

We conclude that Defendant is not entitled to relief on this issue.

### *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence to sustain his convictions. An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As applicable to this case, aggravated sexual battery is statutorily defined as "unlawful sexual contact with a victim by the defendant" where the victim is less than 13 years old. T.C.A. § 39-13-504(a)(4). Sexual contact "includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id*. § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id*. § 39-13-501(2). "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." *Id*. § 39-13-522(a). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required." *Id*. § 39-13-501(7).

In challenging the sufficiency of the evidence, the Defendant does not contest the evidence establishing the elements of any particular conviction. Instead, he attacks the credibility of the victims and argues that the victims' "allegations were rather general descriptions of abuse that could not be credited to establish that the allegations actually

occurred." Defendant asserts that the victims gave "vague descriptions of [Defendant]'s behavior" and that neither victim "could pinpoint dates" or "describe[ ] any detail that indicated that they had intimate knowledge of [Defendant]'s person or habits."

Both of the victims described specific instances of sexual contact. R.P. testified that Defendant rubbed her genital area while he was holding her at the funeral home after her mother died. She described several incidents that occurred in the bedroom she shared with K.H. at the home where Defendant and D.H. lived. R.P. testified that on one occasion, Defendant came into her bedroom and asked her what kind of cell phone she wanted. Defendant then pulled her pants down and touched her vagina while he was talking to her. Defendant also touched her chest under her shirt. Defendant touched R.P. again on her private and her chest. R.P. indicated on an anatomical diagram and through her testimony that Defendant's touching involved sexual penetration. On another occasion, Defendant put R.P.'s hand on his penis and made her "hold it." K.H. testified about two instances when Defendant touched her on her breast. On one of those occasions, Defendant masturbated in front of her.

In the light most favorable to the State, the evidence shows that on four separate occasions, Defendant sexually abused R.P. Defendant digitally penetrated R.P. on two occasions. On two occasions, Defendant sexually abused K.H. The State asserts that the fact that neither victim could pinpoint dates of the occurrences of sexual abuse does not defeat evidentiary sufficiency. We agree. *See State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). Moreover, the testimony of a child victim, alone, is sufficient to uphold a conviction for child rape. *See State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003). Additionally, K.H.'s testimony established that Defendant implicitly admitted to the abuse. She testified that when she told her grandmother about the abuse, Defendant was present, and Defendant stated that it was "because of [his] drinking." When K.H. confronted Defendant about the abuse during a controlled phone call, Defendant again stated that he was "drinking heavy" during the time of the abuse.

We conclude that the evidence was sufficient to support Defendant's convictions. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant challenges the trial court's imposition of consecutive sentencing. On appeal, Defendant argues that his effective sixty-year sentence was an abuse of discretion because it was excessive and not the least severe measure necessary to achieve the purposes for which the sentence was imposed. Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380

15

S.W.3d 682, 708 (Tenn. 2012); *see also State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. 40–35–115(a). The procedure used by the trial courts in deciding sentence alignment is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2). The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the following seven statutory criteria exists:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

16

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

*Id*. § 40-35-115(b).

As an initial matter, Defendant urges this court to apply a de novo standard of review to the trial court's sentencing determination. Defendant asserts that the standard of review now employed in appellate review of sentencing determinations is contrary to the standard expressly directed in Tennessee Code Annotated section 40-35-401(d). Defendant argues that our supreme court's "single-handed abrogation of the plain-language of the appellate standard of review contained in a statute passed by the General assembly is not an appropriate exercise of the judicial function." The State fails to address this portion of Defendant's argument in its brief. Therefore, the State has waived argument on the issue, and we will consider only the record and Defendant's brief with respect to this issue.

As stated above, our supreme court has extended the standard of review enunciated in *Bise* to consecutive sentencing determinations. *Pollard*, 432 S.W.3d at 860; *Bise*, 380 S.W.3d at 707; *see also Caudle*, 388 S.W.3d at 278-79 (applying abuse of discretion with a presumption of reasonableness to review of alternative sentencing determinations by the trial court). Thus, the presumption of reasonableness gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b). . . ." *Pollard*, 432 S.W.3d at 861. The Tennessee Supreme Court in *Bise* held that the 2005 amendments to the Sentencing Reform Act of 1989 "effectively abrogated the de novo standard of appellate review," and the court adopted, in its place, "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." 380 S.W.3d at 707.

17

Defendant effectively requests that this court overrule the decisions of our supreme court and apply a different standard than that announced in *Bise*, *Caudle*, and *Pollard*. This issue is without merit. Of course, this court is bound by law to follow the dictates of our supreme court when it interprets the law of our State. Accordingly, we will review Defendant's sentence under an abuse of discretion standard affording a presumption of reasonableness to the trial court's conclusions.

Defendant was convicted of two counts of rape of a child and six counts of aggravated sexual battery. At the sentencing hearing the presentence report was introduced and entered as evidence. No witnesses testified at the sentencing hearing. The trial court found that under T.C.A. § 40-35-103, confinement was necessary to avoid depreciating the seriousness of the offense and confinement was particularly suited to provide an effective deterrent to others likely to commit similar offenses. As enhancement, the court considered enhancement factor one, that Defendant had a previous history of criminal convictions in addition to those necessary to establish the range; enhancement factor four, that the victims were particularly vulnerable because of age; enhancement factor seven, that the rape of a child offenses were committed for sexual gratification; and enhancement factor eight, that Defendant had failed to comply with the conditions of a sentence involving release into the community. *See* T.C.A. § 40-35-114(1), (4), (7), (8). In mitigation, the trial court noted, "I would give him that no one was physically harmed, but the psychological harm is maybe even greater than physical harm, but still I will allow that." The trial court imposed 20-year sentences for each of Defendant's two rape of a child convictions and ten-year sentences for each of Defendant's six aggravated sexual battery convictions. The trial court considered Tennessee Code Annotated section 40-35-115(b)(1) and found that Defendant was convicted of two or more statutory offenses involving sexual abuse of a minor. The trial court ordered that counts 3 and 4 be served consecutively; count 5, concurrently; count 6, consecutively; and counts 7 and 8, consecutive to each other, but concurrently with the remaining counts.

At the conclusion of the sentencing hearing, after the trial court imposed sentences in each of Defendant's convictions, the court stated, "[a]lso, the Court believes that it's necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentence reasonably relates to the seriousness of the offenses committed." The trial court made no finding that Defendant was a dangerous offender. The State acknowledges that these findings "echo those required for the imposition of consecutive sentencing under the dangerous offender category" in T.C.A. §40-35-115(b)(4). The State asserts, however, that the trial court's imposition of consecutive sentencing was based on its finding that subsection (5) applied. We agree with the State.

Defendant contends that the trial court failed to give appropriate consideration to the *Wilkerson* factors, but rather the trial court "merely recit[ed] boiler-plate language with no indication how that language applied to the facts in [Defendant]'s case." *State v. Wilkerson* sets forth two additional factors to be considered before a defendant may be ordered to serve consecutive sentences based on the dangerous offender classification. *See* Tenn. Code Ann. § 40-35-115(b)(4). Here, the trial court made findings consistent with *Wilkerson*, that consecutive sentences were necessary to protect the public against further criminal conduct by the defendant and that the terms imposed reasonably related to the seriousness of the offenses committed. However, the record shows that the trial court also found that Defendant was convicted of two or more statutory offenses involving sexual abuse of a minor, under Tennessee Code Annotated section 40-35-115(b)(5). Because the trial court provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b), we must give deference to the trial court's imposition of consecutive sentencing. *See Pollard*, 432 S.W.3d at 861. We note that the trial court did not make specific findings regarding the other considerations required in subsection (5), which provides:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

T.C.A. § 40-35-115(b)(5).

Nevertheless, we conclude that the record establishes these additional circumstances. In applying enhancement factors to Defendant's sentence, the trial court found that the relationship between Defendant and the victims established that Defendant was in a position of trust. Defendant was the live-in boyfriend of K.H.'s custodial grandmother. The court also found that "the psychological harm is maybe even greater than physical harm[.]" Although the trial court did not explicitly consider these aggravating circumstances, the court implicitly provided reasons establishing a ground for the imposition of consecutive sentencing.

We conclude that the trial court did not abuse its discretion in sentencing Defendant. Defendant is not entitled to relief on this issue.

19

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE