IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 2, 2017

**STATE OF TENNESSEE v. DEANGELO NORTON**

**Appeal from the Criminal Court for Shelby County**
**No. 15-00754       J. Robert Carter, Jr., Judge**

———————————————————

**No. W2016-02069-CCA-R3-CD**

———————————————————

A Shelby County Grand Jury returned a two-count indictment charging the Defendant, Deangelo Norton, with rape of a child and aggravated sexual battery. Pursuant to Rule 412 of the Tennessee Rules of Evidence, prior to trial the Defendant filed a notice of his intent to introduce evidence at trial of the child victim's knowledge of sexual matters. The trial court held a pretrial evidentiary hearing on the subject and denied the request, finding the proposed testimony to be irrelevant. A jury trial followed, and the Defendant was convicted of both counts. The trial court merged the convictions and sentenced the Defendant to twenty-five years at 100%. On appeal, the Defendant argues that the trial court erred in denying his request to introduce evidence and that the evidence presented at trial was insufficient to support his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined. J. ROSS DYER, J., Not Participating.

Stephen C. Bush, Shelby County Public Defender; Barry W. Kuhn (on appeal) and Thomas Leith and Katherine Oberembt (at trial), Assistant Shelby County Public Defenders, for the appellant, Deangelo Norton.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Joshua N. Corman and Abby Odom, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The victim, who was seven years old at the time of the offenses, lived in an apartment in Memphis with his parents and younger sister. During 2011 and 2012, the Defendant, the victim's uncle, occasionally babysat the victim and his sister. On August 23, 2012, the victim's mother received a disturbing telephone call at work from her mother, so she went home to speak with the victim. She asked the victim, "Ha[s] [the Defendant] ever d[one] anything to you? Ha[s] he ever touched you?" The victim began to cry and appeared nervous. After being reassured by his mother that he would not get in trouble, the victim confirmed that the Defendant had touched him inappropriately. In response, she promised the victim he would never see the Defendant again.

The victim testified that he felt scared when he told his mother about the sexual abuse and offered this summation of the first occurrence:

> [The Defendant] took me in my room, told me not to tell anyone. He put me on my bed. He stuck his peewee in my butt and . . . [w]e went into the hallway, he put his thing in my mouth and told me not to let anyone else do it to me.

The victim said that the Defendant had "touched [him] more than one time on [his] butt" and that the last incident took place shortly before his mother asked him about the abuse.

On August 24, 2012, the day after the victim disclosed the sexual abuse to his mother, she took the victim to Christ Community Health Services where Dr. Elizabeth Elliott treated him and noted the reason for his visit as follows:

> [The victim] is brought in today by his mother due to concern for possible abuse. [The victim] reports that [the Defendant] used to hurt him when the [Defendant] was keeping him and his sister while his mom was at work. He says that the [Defendant] would place his boy part in [the victim's] mouth and also in his butt. He cannot tell me the last time that it happened. Tells me that it happened a lot. He says that the [Defendant] only did it to him and not his sister.

Dr. Elliott then explained her examination of the victim:

I evaluated [the victim's] face, specifically the eyes and nose and the mouth looking for signs of trauma. Evaluated lungs, heart and abdomen. Also his

- 2 -

genital urinary tract, specifically looking at the penis for signs of urinary discharge or any lesions which were not present. Also examined the testicles and the anus which appeared normal. Looked at his skin for rashes and there were none as well.

Dr. Elliott informed the victim and his mother that there were no obvious physical signs of sexual abuse, but that finding did not mean the abuse did not happen. Due to the victim's allegations, his mother and Dr. Elliott reported the abuse to the Department of Children's Services ("DCS"). The victim's mother also informed Dr. Elliott she would file a police report.

Subsequently, the victim's mother took the victim to the Memphis Child Advocacy Center for an interview on October 23, 2012. The victim was taken into a room where only the forensic interviewer, Teresa Onry, and the victim were present. Law enforcement officers assigned to the case monitored the interview via video from a separate room and telephoned Ms. Onry at the end of the interview with additional questions.

Ms. Onry said that she asked the victim open-ended questions during the interview because children are vulnerable to suggestibility. The victim told Ms. Onry that the Defendant occasionally picked him up from school when his mother was at work. One day after school, the Defendant put his penis in the victim's mouth while they were in the hallway of the victim's apartment and told the victim not to let anyone else do that. The Defendant then took the victim into the victim's room and put his penis in the victim's anus. According to the victim, the Defendant did this on more than one occasion, and it "felt bad." The victim eventually reported the abuse to his mother after she asked if the Defendant had ever touched him, and she subsequently took him to see a doctor because his "butt kept hurting."

The victim's mother next took him to the Memphis Sexual Assault Resource Center ("MSARC") on October 25, 2012, where he was examined by Judy Pinson, who was accepted by the trial court as an expert in forensic nursing. Ms. Pinson documented the victim's visit as follows:

> Seven and a half year old male referred by DCS and brought in by mother who reports that [the victim] told her in August that [the Defendant] touched him and penetrated him anally and forced fellatio. This occurred more than five times. Mother took child to the Christ Community Health Center in August where he was first questioned and examined.

Ms. Pinson said that she did not find any signs of sexual abuse during her examination of the victim. However, physical injuries are not always found in sexual abuse cases, particularly when there is a lapse in time between the date of abuse and the date of treatment.

Dr. Karen Lakin, assistant professor of pediatrics at the University of Tennessee and the medical director of the LeBonheur Cares Program, testified as an expert in child abuse pediatrics. She said that she reviewed the victim's medical records from Christ Community Health Services and from MSARC. Those records indicated that no physical evidence of abuse was found during either visit. However, the absence of a traumatic medical finding on physical examination following a sexual assault is not unexpected. Based on her review of the records, Dr. Lakin said she would not expect the victim's healthcare providers to have found physical signs of abuse. Young children often have a poor grasp of time lapse, and it appears there was a delayed disclosure of the abuse. Moreover, any injuries to the victim's anus would have healed prior to his treatment because the mucosal portion of the anus heals very rapidly.

On cross-examination, Dr. Lakin acknowledged a 2014 study, Anal Signs of Child Sexual Abuse: A Case-Control Study, based on the authors' analysis of every eligible child sexual abuse case from 1990 to 2007. Of those children suspected of being sexually abused, seventy-four percent showed one or more signs of anal injury. Dr. Lakin further acknowledged another study from 2013, Anal Findings in Children With or Without Probable Anal Penetration, which also showed a significant correlation between suspected juvenile victims of sexual abuse and anal soiling, fissure, and laceration. The key to both studies, however, was the proximity in time of the suspected sexual abuse to the physical examination. Also, there was a risk of bias with both studies, particularly the second, where the reviewers examined photographs of children they knew in advance had been sexually abused. While the studies found that redness and anal fissures might be present in juvenile victims of sexual abuse, neither study indicated that those findings must be present when sexual abuse has occurred.

Testifying on behalf of the Defendant, Myneisha Mason, the Defendant's sister, said that in 2011 and 2012 the Defendant lived with their paralyzed mother and took care of her. When Ms. Mason learned of the victim's accusations, she spoke to the Defendant, who denied any inappropriate contact. After the allegations had been made, Ms. Mason attended a birthday party for her mother on June 17, 2013. Both the victim and the Defendant were at the party, and the victim appeared calm and happy. Ms. Mason acknowledged that she and the victim's mother have a poor relationship.

Warren Norton, the Defendant's brother, testified that he was angry, confused, and shocked when he learned about the allegations against the Defendant. He said that when

the victim saw the Defendant at the party on June 17, 2013, the victim ran and jumped into the Defendant's arms. Mr. Norton did not know if the Defendant had ever babysat the victim.

Michael Hodo, another brother of the Defendant, testified that in June 2012 the victim's father, who was in jail at the time, called and asked him to stay with the victim's mother and their children during his incarceration. Mr. Hodo then lived with her, the victim, and the victim's sister for approximately six months. During that time period, he was only alone with the children once and did not remember a babysitter coming to the apartment. He was at the apartment when the victim told his mother about the sexual encounters with the Defendant, but he never talked to the victim about the allegations.

The Defendant testified that he dropped out of school in the ninth grade to care for his paralyzed mother. He did not have a vehicle at the time, but his mother's nurse allowed him to borrow her car occasionally. In addition to caring for his ailing mother, in 2011 and 2012, the Defendant babysat the victim and his sister. In August 2012, the victim's mother telephoned the Defendant and informed him of the victim's accusations. She then asked the Defendant if he had ever touched the victim inappropriately. In response, the Defendant "cussed her out" and hung up the phone. Following the telephone call, the Defendant did not see the victim again until the birthday party for his mother on June 17, 2013. He and the victim played together at the party, and the victim's mother smiled as she watched them play. The Defendant denied sexually abusing the victim and stated, "I know for a fact I did not molest [the victim]." According to the Defendant, the victim's reason for accusing the Defendant of sexual abuse remains a mystery.

## ANALYSIS

On appeal, the Defendant alleges the trial court erred in denying his request to introduce evidence of the victim's knowledge of sexual matters at trial and challenges the sufficiency of the evidence to sustain his convictions for rape of a child and aggravated sexual battery. The State contends that the trial court properly denied the Defendant's request to present evidence and that the evidence was sufficient to support his convictions. We agree with the State.

### I. Evidence of Knowledge of Sexual Matters

Pursuant to Rule 412 of the Tennessee Rules of Evidence, prior to trial the Defendant filed a notice of his intent to introduce evidence of the victim's knowledge of sexual matters. At a hearing on the matter, Myneisha Mason testified that she attended a birthday party for the victim's mother on December 1, 2009. The victim, who was four

years old at the time, and several other children were present.  During the party, the victim's mother and grandmother went upstairs and found the children "hunching" with "their clothes down."  Ms. Mason understood this to mean that the children were "[b]asically trying to have sex"; however, Ms. Mason did not witness the incident. Warren Norton testified that he also attended the birthday party and that when the victim's grandmother went to check on the children, she found them "upstairs with their pants down hunching each other."  Mr. Norton did not see the incident but understood "hunching" to mean they were pretending to engage in sexual acts.

The trial court denied the Defendant's request to introduce this evidence at trial. The trial court found the testimony to be irrelevant, as the witnesses did not see the children engaging in this act, nor did they know which specific children were involved. Further, while the witnesses expressed their belief that "hunching" constituted sexual behavior, there was no evidence of such.

Rule 412 of the Tennessee Rules of Evidence addresses the admissibility of evidence regarding the prior sexual behavior of a victim of a sex crime.  As a rule of evidence, this court reviews Rule 412 rulings for an abuse of discretion, and the admissibility of such evidence rests with the sound discretion of the trial court.  State v. Sheline, 955 S.W.2d 42, 46 (Tenn. 1997).  Rule 412 defines "sexual behavior" as "sexual activity *of the alleged victim* other than the sexual act at issue in the case."  Tenn. R. Evid. 412(a) (emphasis added).  Rule 412 further provides, in pertinent part, as follows:

> (c)  Specific Instances of Conduct.  Evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this rule, and the evidence is:
>
> . . . .
>
> (4)  If the sexual behavior was with persons other than the accused,
>
> (i) to rebut or explain scientific or medical evidence, or
>
> (ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters, or
>
> (iii) to prove consent if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the accused's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in such a manner as to lead the defendant reasonably to believe that the victim consented.

Tenn. R. Evid. 412(c).

Here, the trial court did not abuse its discretion in excluding testimony regarding "hunching." For the purpose of Rule 412, sexual behavior is expressly limited to "sexual activity of the alleged victim," yet the Defendant did not introduce any evidence at the pretrial hearing that the victim was one of the children engaged in this act. The witnesses merely stated that the victim was one of several children present when the "hunching" occurred. Further, while both Ms. Mason and Mr. Norton testified they understood "hunching" to be a sexual activity, the Defendant did not provide any evidence that "hunching" resembled the sexual acts the victim accused the Defendant of engaging in with him. Lastly, the victim accused the Defendant of sexually assaulting him in 2012, over three years after the alleged "hunching" incident. The trial court did not err in finding the testimony rendered by Ms. Mason and Mr. Norton at the pretrial hearing to be irrelevant and, therefore, inadmissible. See State v. Henry Wayne Russell, No. M2013-00166-CCA-R3-CD, 2014 WL 1704953, at *17 (Tenn. Crim. App. Apr. 29, 2014) (concluding a child sexual abuse victim's "behavior with other children several years before the present offenses is not relevant to the issue of [d]efendant's guilt or innocence in raping [the victim]"), perm. app. denied (Tenn. Apr. 10, 2015). The Defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary

instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

## A. Rape of a Child

As charged in Count 1 of this case, "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Id. § 39-13-501(7). Accordingly, in order to convict the Defendant of child rape, the jury had to find that the State proved beyond a reasonable doubt that the Defendant sexually penetrated the victim

and that, at the time, the victim was between the ages of three and thirteen. See State v. Elkins, 102 S.W.3d 578, 582 (Tenn. 2003).

At trial, the State presented sufficient proof that the Defendant sexually penetrated the seven-year-old victim through fellatio and anal intercourse. The victim testified that the Defendant "stuck his peewee in [the victim's] butt" and "put his thing in [the victim's] mouth." The victim then consistently reported this to his medical providers and the Memphis Child Advocacy Center. The Defendant essentially challenges the credibility of the victim on appeal, arguing the victim's uncorroborated testimony alone is insufficient to support his child rape conviction. This is simply not true. The uncorroborated testimony of a child victim of sexual abuse is sufficient to support a child rape conviction, and "a jury's verdict will not be overturned unless there are inaccuracies or inconsistencies that 'are so improbable or unsatisfactory as to create reasonable doubt of the [defendant's] guilt.'" Elkins, 102 S.W.3d at 582-83 (quoting State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999)). The Defendant has not pointed out any such inaccuracies or inconsistencies. Moreover, questions regarding the victim's credibility and the weight and value to be given to his testimony are to be determined by the trier of fact and not this court. Through its finding of guilt, the jury accredited the testimony of the victim, and we will not disturb that finding on appeal. The Defendant is not entitled to relief on this issue.

### B. Aggravated Sexual Battery

Count 2 charged the Defendant with aggravated sexual battery. "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim [where] . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "Sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim [when] . . . [t]he sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know . . . that the victim did not consent[.]" Id. § 39-13-505(a)(2). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" Id. § 39-13-501(6).

For the same reasons that the proof at trial was sufficient to support the Defendant's conviction for rape of a child, it was sufficient to support his conviction for aggravated sexual battery. It is undisputed that the victim was seven years old at the time of the offenses, and the victim testified that the Defendant forced fellatio and anal intercourse on him. The jury accredited this testimony through its guilty verdict. The victim's testimony alone is sufficient to support this conviction, and the lack of physical

corroboration is inapposite.  <u>See</u> <u>State v. Smith</u>, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000).  The Defendant is not entitled to relief on this issue either.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

 

 

_____
ALAN E. GLENN, JUDGE